350 So.2d 693 (1977)
William Mansker CLUBB
v.
STATE of Mississippi.
No. 49836.
Supreme Court of Mississippi.
September 28, 1977.
Rehearing Denied October 26, 1977.
Johnston, Wright & Steinberger, Fielding L. Wright, Jr., Pascagoula, for appellant.
A.F. Summer, Atty. Gen. by Billy L. Gore, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before INZER, ROBERTSON and BOWLING, JJ.
INZER, Presiding Justice, for the Court:
William Mansker Clubb was indicted, tried and convicted in the Circuit Court of Jackson County for the crime of armed robbery. He was sentenced to serve fifty years in the State Penitentiary, from which he appeals.
On the night of July 25, 1974, a gambling party was in progress in a boat house owned by Robert Vance and located over the water on Corwell Drive in Gulf Hills. Approximately twenty men and women were in attendance. About 9:30 p.m. a knock was heard at the door. Thinking it was someone else seeking to join in the gambling game and being unaware of what was about to happen, one of the occupants opened the door. Three men armed with hand guns burst into the room. The intruders wore stocking masks over their heads. This intrusion brought the games of chance to an unexpected conclusion. The three men required all persons present to place their hands on the dice table and told them not to look up. One by one the men were taken into the hallway where they were forced to give up all their valuables. They were then ordered to strip to their underwear and were taken into a backroom where their hands and feet were bound. After the men were stripped of their valuables and clothing, the women were forced to hand over their valuables and they, too, were bound. Although searched, the women were not required to shed their clothing.
The robbers were in no hurry to complete their job; hence, the proceedings took well over an hour. While they were busily engaged with those already present, other people arrived to join the party. To their utter amazement, they too were confronted by the armed men and forced to join in the hands on the table game. They, too, were robbed and firmly bound. After the robbers had relieved those present of all their valuables (it is estimated that approximately $16,000 was taken) the robbers departed.
After their departure the Jackson County Sheriff's department was notified of the robbery. The crime was investigated by Jerry Quave and after obtaining a description of the robbers from Claudine Hans, who was present during the robbery, he sent out an inquiry to the law enforcement agencies in the area for aid in identifying the robbers. The sheriff's department in Jefferson Parish, Louisiana, sent Quave ten photographs of people, who in their opinion, were capable of committing the crime. Quave showed the photographs to four persons *695 who had knowledge of the robbery. Mrs. Hans identified the photograph of appellant as being one of the robbers. J.B. Richmond, Sr. identified the appellant as being one of the three men he had seen near the boat house on the day before the robbery. Two other persons robbed were shown the photographs, but they were unable to identify the appellant as one of the robbers.
Appellant, along with two other persons, was indicted in September 1973 and charged with armed robbery. A motion was filed to suppress the evidence relative to the identification and it was overruled. Due to a technical defect in the indictment, the original indictment was quashed, and appellant was reindicted in September 1975 by the April 1975 grand jury. Another motion was filed to suppress the identification evidence, and it was likewise overruled. In preparation of the trial of the case, the assistant district attorney, in interviewing people who were present when the robbery occurred, would lay the photographs furnished Quave out on a table and ask the person being interviewed, "Do you recognize any of these people?" Four people interviewed separately identified the picture of appellant as being one of the men who robbed them. The assistant district attorney knew that appellant was represented by counsel, but he never notified the attorney that he was conducting the photographic lineups.
At the trial of the case, the state produced five witnesses who were robbed and each of them made an in-court identification of appellant as being one of the robbers. The defendant called five other persons who were victims of the robbery, and each of them testified that they could not identify appellant as being one of the robbers. The defendant also called Assistant District Attorney Colingo and questioned him relative to the method used in interviewing the witnesses.
In rebuttal the state called as a witness J.B. Richmond, Sr. who testified that on the day before the robbery he saw appellant and two other men having a discussion of some nature near the boat house where the robbery occurred. After both sides rested, appellant made a motion for a directed verdict, alleging several grounds therefor, including that the photographic lineup conducted by the assistant district attorney in the absence of counsel for the defendant so tainted the identification to the extent that the evidence should be excluded. This motion was overruled and the jury found the defendant guilty as charged.
On appeal it is contended that the trial court was in error in overruling defendant's motion to suppress the photographic identification for the reason that such identification was totally tainted in the light of the surrounding circumstances. In this connection, appellant raises the question of whether he had a right to have counsel present on post-indictment pretrial photographic identification.
Both appellant and the state agree that the issue is whether the photographic lineup or array offended against the Constitution. Both also agree that the proper test to be applied is the question of whether the conduct of the confrontation violates due process in light of the totality of circumstances surrounding the confrontation.
We see nothing unduly suggestive about the first use of the ten photographs received from Louisiana authorities. All that the investigating officers had was a description of the three men who committed the robbery. After receiving these photographs, the officers naturally called in some persons who were present to see if they could identify any of the people as being the ones who committed the robbery. As a result of the use of the photographs, appellant and two other men were identified and indicted. There is no indication that the officer influenced the witnesses to identify any person in the photographs included in this group.
The only serious question relative to the identification concerns the use of the photographs by the assistant district attorney in his preparation for trial. At that time appellant was indicted and had counsel *696 representing him. The testimony of the assistant district attorney establishes that he had been appointed after the appellant was indicted due to the district attorney being indisposed. In reviewing the file he found the photographs, and interviewed the witnesses, not in a group, but individually. He spread the photographs to ascertain whether the witness could then identify anyone in the group as being one of the robbers.
The first question is whether this photographic lineup violated appellant's Sixth Amendment right to have counsel present at the confrontation. The lineup in the present case is somewhat similar to that in United States v. Ash, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973), where the prosecutor after indictment and in preparation for trial used a photographic display to determine whether the witness he planned to call would be able to make an in-court identification. The Supreme Court of the United States held that the Sixth Amendment does not grant the right to counsel at photographic displays conducted by the government for the purpose of allowing a witness to attempt identification of the offender. Appellant recognizes the rule announced by the Supreme Court, but contends that we should do as some other states have done and adopt a more stringent rule. While we have not considered a photographic lineup in the light of the Ash decision, we did in Stevenson v. State, 244 So.2d 30 (Miss. 1971), say, among other things:
Appellant contends that the photograph shown to Mr. McCaffrey from which he identified appellant as one of the robbers was tantamount to a lineup without the appellant or his counsel being present and that this brings this case within the rule announced in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). However, the rule announced in Wade and other lineup cases does not apply to out of court photograph identification whether the accused is in custody or not. United States v. Ballard, 5 Cir., 423 F.2d 127 (1970). Furthermore, in this case there was ample evidence to show that Mr. McCaffrey's in-court identification was based upon independent facts. (244 So.2d at 33).
The holding in Ash is in line with what we said in this case, and we think it is the proper rule.
Viewing the photographic identification in the instant case in the light and totality of the circumstances, we do not find that it was so impermissible as to give rise to a substantial likelihood of irreparable misidentification. Evans v. State, 273 So.2d 495 (Miss. 1973). Even if it could be said that the photographic identification was impermissibly suggestive, the evidence is sufficient to show that the witnesses made an in-court identification of the appellant based upon an adequate opportunity to observe him during the course of the robbery. They were able to make the identification without the dependence upon or assistance from the photographs.
In summary, we are of the opinion that the trial court was correct in overruling appellant's motion to suppress the identification evidence. There is very little, if any, evidence that the photographic identification was prejudicial or impermissibly suggestive. The evidence is sufficient to support the finding of an independent source.
Appellant next contends that the trial court was in error in requiring defense counsel to state to the jury that he made an erroneous statement of law in his closing argument, when, in fact, the statement of counsel was a correct statement. The record reflects that in his closing argument, defense counsel stated:
And they have arrested Mr. Clubb, and they charged that he took a bunch of stuff, but I don't see one thing on that table over there. Not one exhibit. They have got to prove it, remember. That he took it, carried it away, and converted it to his own use.
When defense counsel concluded this argument the trial judge called the attorneys to the bench and subsequent to a conference, Mr. Wright stated to the jury:

*697 The discussion was that the state doesn't have to prove that he converted it to his own use. But everything else I told you about what they have got to prove remains exactly the same. They got to prove he took it.
Defense counsel then objected and took exception to the ruling of the court that he was wrong in his statement of the law to the jury. The court replied, "The jury and attorneys should go by the instructions." Appellant contends that under our holding in Thomas v. State, 278 So.2d 469 (Miss. 1973), his statement of the law to the jury was correct. The issue in Thomas was whether Thomas intended to permanently deprive the police officers of their property, and we held that it was error to refuse to grant the defendant an instruction covering that issue. No such issue was raised in this case. Appellant did not request the court to instruct the jury as to this feature of the case. We are of the opinion that the evidence in this case was sufficient to prove the asportation and is in keeping with what we held in Bell v. State, 259 So.2d 118 (Miss. 1972).
While a trial judge has wide discretion in presiding over a trial and has the authority to require counsel to correct an erroneous statement made to the jury, the judge should be careful in doing so, to avoid prejudicing the defendant. The trial court should assume that the jurors make allowances for overstatements and claims of attorneys in arguing their case for their clients. However, after review of the record in this case, we do not feel that the action of the trial judge was prejudicial or that it deprived the defendant of a fair trial.
Appellant assigns as error the refusal of the court to grant his instruction D-11 which reads as follows:
The court instructs the jury that if there is a reasonable doubt in your mind as to the identification of the Defendant as having been present and participated in the robbery in question on or about July 25, 1974, at the Boat House in Gulf Hills, then such doubt must be resolved in favor of the Defendant and it is your sworn duty to return a verdict of Not Guilty.
First, it should be observed that the instruction is abstract in form. A similar instruction was reviewed in Ragan v. State, 318 So.2d 879 (Miss. 1975), and we held that the instruction was clearly erroneous for the reason that reasonable doubt of the guilt or innocence of the accused in a criminal case is not based on just a part of the evidence but rather on the entire case, including the circumstances surrounding the crime. Appellant would have been entitled to an instruction covering this feature, but the instruction offered was correctly refused. Appellant also contends that Instruction S-2 granted at the request of the state is erroneous. We find no merit in this contention.
After careful consideration of the record in this case, we find no reversible error and for that reason, we are of the opinion that the case should be affirmed.
AFFIRMED.
PATTERSON, C.J., SMITH, P.J., and ROBERTSON, SUGG, WALKER, BROOM, LEE and BOWLING, JJ., concur.