445 So.2d 1373 (1984)
Robert BLAIR
v.
STATE of Mississippi.
No. 54734.
Supreme Court of Mississippi.
February 8, 1984.
*1374 Mager A. Varnado, Jr., Gulfport, for appellant.
Bill Allain, Atty. Gen. by Frankie Walton White, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and PRATHER and ROBERTSON, JJ.
PATTERSON, Chief Justice, for the Court:
Robert Blair was convicted in the Circuit Court of Harrison County, First Judicial District, of armed robbery and sentenced to twenty (20) years in the custody of the Mississippi Department of Corrections. He appeals and assigns as error that the court:
1. overruled his motion for a continuance;
2. overruled his motion to quash the indictment;
3. overruled his motion to cause witness to confer with defense counsel;
4. overruled his motion for funds with which to investigate and prepare the defense;
5. overruled his motion to quash the jury panel;
6. refused to grant a defense instruction on simple robbery and grand larceny; and
7. allowed the prosecutor to question a defense witness as to irrelevant matters.
On August 21, 1981, the prosecutrix was employed as a cashier at a Majik Mart Store in Gulfport. She was alone in the store about 4:00 o'clock a.m., when a man came in and spoke with her for a few minutes. While she had her back turned to him, he seized her by the hair, displayed a pocketknife with its blade exposed, and told her he would stab her if she did not accompany him to the back room of the store. She was also told that he had previously killed three people.
In this room the prosecutrix was raped and told by her assailant that he wanted the money from the store safe. In fear for her life, the prosecutrix opened the safe and the cash register from which the money was taken. A case of beer and several cartons of cigarettes were also taken. Having loaded his booty in her car, the man got into it and departed.
At trial Blair admitted the larceny of the money, beer and cigarettes but denied the use of force or threats of force in their taking. He also testified the prosecutrix consented to having sexual intercourse with him.
Blair argues first that the trial court improperly overruled his motion for a continuance. In that motion Blair stated that he needed additional time to complete investigation of the case and to establish contact with his father, who was working in Southeast Asia. The court overruled the motion, noting that defendant's counsel had already made five attempts to contact Blair's father, all to no avail.
The record reveals the trial court thought Blair's hope of getting financial assistance from his father was forlorn and more importantly could not be concluded within a reasonable time. We are therefore of the opinion the court was within its discretion in denying the motion and that Blair was not prejudiced thereby. Norman v. State, 385 So.2d 1298, 1302 (Miss. 1980); Saucier v. State, 259 So.2d 484, 486 (Miss. 1972).
Blair's second proposition can be disposed of by observing that his request for a preliminary hearing was made after the grand jury returned the indictment against him. "The nature and purpose of a preliminary hearing is to determine whether probable cause exists to hold a person to await proper action of the grand jury." Glass v. State, 278 So.2d 384, 387 (Miss. 1973). This question had therefore been decided before Blair raised it. We find no merit in this assignment of error.
Further, we are of the opinion the court committed no error in overruling Blair's motion to cause a state's witness to confer with defense counsel. In Scott v. *1375 State, 359 So.2d 1355, 1360 (Miss. 1978), it is stated:
A defendant is entitled to access to prospective witnesses; however, this right exists coequally with the right of a witness to refuse to say anything.... We hold that the trial judge did not have the authority to require the witness to submit to a private examination by defense counsel.
As in Scott, the witness in this case was unwilling to talk with defense counsel. The trial court therefore properly refused to require her to confer with Mr. Varnado, Blair's attorney.
Fourthly, Blair argues the court improperly overruled his motion for funds with which to investigate and prepare the defense.
This Court has never held that the state has the duty of providing indigent criminal defendants with private investigators. See Bullock v. State, 391 So.2d 601, 607 (Miss. 1980); Laughter v. State, 235 So.2d 468, 472 (Miss. 1970). This assignment is therefore without merit.
In his fifth assignment of error, Blair contends the jury panel should have been quashed because the prosecutor's opening statement referred to crimes other than the one for which Blair was on trial. The pertinent part of that statement is set out below:
At that point, she said that she saw this knife, and that he said he was going to take her back in the back of the store. That he took her back in the back of the store against her will back there, and while back there in the back of the store made her cut off the lights and everything back there, and committed an assault upon her back there. She will testify about that. And after he did that, he told her he was going to rob her, and then he somehow came up with a screwdriver. At that point, she saw the screwdriver there in his hand, and she'll describe it for you and the knife... . Then after he took her back in the back, he brought her out and told her that he wanted her to open up the safe, that he wanted the money. That he was going to rob her of the money, and that he knew there was some thousand dollars in there. He told her if she didn't comply with him throughout all this that he'd kill her. That he'd killed some three other people. And she heard him say that, and that was the reason, based upon that, that she was cooperating with him. Getting him anything that he wanted at that point. (Emphasis Added).
After the prosecutor had completed his statement, defense counsel moved the court to quash the panel. The court ruled the other crimes were part of the res gestae and overruled defendant's motion. When the state presented evidence of other crimes in its case in chief, defendant made no objection.
In general, the prosecution is not allowed to show a defendant committed crimes other than the one for which he is on trial. However,
... There are certain recognized exceptions to the rule. Proof of another crime is admissible where the offense charged and that offered to be proved are so connected as to constitute one transaction, where it is necessary to identify the defendant, where it is material to prove motive and there is an apparent relation or connection between the act proposed to be proved and that charged, where the accusation involves a series of criminal acts which must be proved to make out the offense, or where it is necessary to prove scienter or guilty knowledge.
Johnson v. State, 416 So.2d 383, 386 (Miss. 1982), quoting Gray v. State, 351 So.2d 1342 (Miss. 1977).
In Oates v. State, 421 So.2d 1025, 1029 (Miss. 1982), we implicitly extended this rationale to include statements made by the district attorney on opening statement.
We hasten to say, however, that reference to a crime other than that charged in the indictment is not proper in all multi crime situations, but is limited to those closely connected by a sequence of events within a short time span and are so intertwined that one cannot be reasonably *1376 extricated from the other. In this case the victim was first accosted when her assailant seized her hair, placed a knife at her throat and directed that she accompany him to a rear store room. After the assault the prosecutrix was permitted to robe herself while the assailant remained just outside the door. When she re-entered the public area of the store the defendant held a screwdriver in his hand instead of the pocketknife with which he had previously threatened her. The reference to the assault in the opening statement by the state's attorney was not error in our opinion because it was part of the res gestae and was appropriate to show the prosecutrix' state of mind, specifically the fear engendered in her by which both the assault and the robbery were accomplished. We therefore think this assignment of error is without merit.
In his sixth assignment of error Blair argues that the court erroneously refused to grant a defense instruction on simple robbery and grand larceny.
We dispose of this assignment of error first by observing the court did grant a simple robbery instruction. Secondly, no testimony, including Blair's, supports a grand larceny instruction. Therefore, our opinion is this contention is meritless. Pittman v. State, 297 So.2d 888, 893 (Miss. 1974).
Finally, the appellant contends the court erred in overruling his objection to improper cross-examination by the state's attorney.
It need be remembered the defendant testified he was not guilty of rape because the prosecutrix consented to having sexual intercourse with him. He also admitted he had taken the goods and money for which he was indicted but that the larceny occurred without the use of force. Moreover, he testified that he was acquainted with the prosecutrix, having previously had intercourse with her; that he had assisted her in the Majik Mart Store and had frequently engaged in conversation with her. This evidence was offered to establish that they were not strangers to each other as the prosecutrix had testified.
In corroboration of this testimony he offered Laurie Middleton as a witness. Laurie testified that she had seen the defendant in the store talking to the prosecutrix on several occasions. On cross-examination she was asked if she were married or had ever been married. After a reply in the negative, she was asked how many children she had and responded that she had two. An objection was interposed by defense counsel but was overruled. This ruling is now contended to be reversible error.
We note, although there was no objection, that the witness was also asked whether her mother and her boyfriend lived together in the same house, to which she responded affirmatively but with the qualifying statement they were to be married the following week.
Mrs. Shirley Middleton, Laurie's mother, testified she had seen the defendant and the prosecutrix engaged in conversations and that they were acquainted. No questions were asked her, however, concerning her living with her boyfriend.
We are of the opinion that this cross-examination of Laurie Middleton on an irrelevant point was reversible error.
As early as 1881, this Court held that the veracity of a witness may not be impeached by showing her to be of unchaste character. Smith v. State, 58 Miss. 867, 874 (1881). Smith was followed by Tucker v. Tucker, 74 Miss. 93, 99, 19 So. 955 (1896). Further, in Mackmasters v. State, 81 Miss. 374, 33 So. 2 (1902), the court stated:
... The wife of defendant, Mrs. Nancy Mackmasters, was an important witness for him, and we think it was error to permit the district attorney to develop to the jury, in cross-examining her, that she was the mother of two children not born in wedlock. This had no relevancy to the issue and was too heavy a load to put on defendant before an average jury in so grave a trial.
When the court was again faced with this issue in Davis v. State, 87 Miss. 337, *1377 39 So. 522 (1905), it followed Mackmasters with the following comment:
... Such testimony was utterly irrelevant to the issue before the jury, which was the guilt or innocence of the appellant of the crime of murder. The witness was not on trial, and it was incompetent to attempt to impeach her veracity by general proof of her unchastity.
These cases require us to reverse and remand this cause for a new trial.
REVERSED AND REMANDED FOR A NEW TRIAL.
WALKER and BROOM, P.JJ., and ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE, PRATHER and ROBERTSON, JJ., concur.