465 So.2d 306 (1985)
Frank HANNER, Jr.
v.
STATE of Mississippi.
No. 55426.
Supreme Court of Mississippi.
February 27, 1985.
*307 Merrida P. Coxwell, Jr., Stanfield, Carmody, Coxwell & Creel, Jackson, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and PRATHER, JJ.
PRATHER, Justice, for the Court:
Defendant/appellant, Frank Hanner, Jr. was convicted in the Circuit Court of the First Judicial District of Hinds County of grand larceny of an automobile and sentenced to a term in the Mississippi Department of Corrections of five years. From this conviction, Hanner appeals, assigning as error the following:
(1) The trial court erred in refusing to grant appellant a hearing on his motion to suppress identification testimony;
(2) The trial court erred in overruling defendant's motion to suppress evidence;
(3) The court erred in allowing the district attorney to improperly cross-examine a defense witness on an irrelevant and inflammatory matter, denying appellant a fair and impartial trial;
(4) The court erred in allowing the district attorney to make improper remarks during closing arguments;
(5) The verdict is against the overwhelming weight of the evidence and contrary to law.
We affirm the conviction.

I.
The grand larceny in question occurred April 25, 1983 of a white over red 1975 Monte Carlo automobile belonging to Ms. Willie Annette Keys. Keys had driven her car to the Wasco Town Coin Laundry in Jackson, Mississippi. Upon entering the Washateria, Keys passed two black males who allegedly initiated conversation with her. Keys ignored the men and proceeded to find her sister who was inside the washateria. Within minutes, Keys saw two black males driving her car out of the parking lot and unsuccessfully attempted to give chase in her sister's car. Within the stolen car was Ms. Keys' purse containing her personalized checkbook and identification cards including driver's license. Keys was unable to give the police a detailed identification of the two men at the time, but later identified Hanner in a photographic lineup.
The night after the automobile was taken from the washateria, Officer Stanley Wright, a policeman with the City of Jackson, stopped an automobile matching the description of Keys' stolen vehicle. The driver presented Officer Wright with a driver's license with the name Willie A. Keys. The sex on the license was illegible. Officer Wright did not take the defendant into custody for the theft of the automobile, because he believed appellant's story that he was in fact Willie A. Keys, and that he had mistakenly reported his car stolen when it was borrowed by his brother-in-law. Officer Wright subsequently identified Hanner as the driver of the stolen automobile in a photographic lineup.
On May 4, 1983, Cleveland Police Officer Serio picked up two checks from a Cleveland grocery store drawn on the account of Willie Keys at a Jackson bank. The checks *308 were unpaid to the grocer because they were reportedly stolen. Officer Serio contacted the Jackson Police Department, learned of the larceny of the Keys' car, and secured a description of the vehicle. A black male seen with the vehicle was reported to have walked with a limp. A notice of the stolen vehicle with description of the car and occupants and of the stolen checks was posted on the Cleveland Police bulletin board. Since the checks were negotiated in Cleveland, it was believed that the vehicle might also be in the vicinity. Acting on this information, Officer White located the stolen vehicle at the Delta Motel. He learned from the manager that the room near the car was registered to a "Willie Keys", a black male who was crippled. The officers gathered around the outside of the room to insure that the occupants did not leave the room. A black male subject exited the motel room and unlocked the trunk of the stolen car. The officers arrested him. This subject left the door to the motel room open. Cleveland Police Officer White asked the two individuals in sight within the motel room to come out of the room. One came out immediately, and the other, the appellant, advised the officer that he was a cripple and that it would take him longer. When Frank Hanner came out of the room, he too was arrested. Officer White then entered the room to look for other subjects. He found a checkbook in plain view lying on the bed where Hanner was sitting. The checkbook clearly had stamped on it the name of Willie A. Keys. He also found a driver's license belonging to Willie A. Keys and registration cards. No arrest or search warrants were obtained prior to making these arrests.
At trial, Hanner's brother, Terry Hanner, testified that he was the one who had stolen the car from the washateria. He described the automobile, discussed passing by Keys at the washateria, told of being stopped by an officer on the night after taking the car, and stated that he drove the car to Cleveland where it was taken from him by a friend.
However, Frank Hanner's fingerprints were discovered inside the stolen automobile. It is not stated in the record whether or not Terry Hanner's fingerprints were also discovered.
Other witnesses supplied an alibi for the appellant Hanner. Royalton placed Terry Hanner in the stolen automobile and Frank Hanner at a party. Mitchell stated she was with Frank Hanner from 4:00 p.m. April 26 until dark on the 27th. Brinson testified that he took Frank Hanner to the motel in Cleveland on the third or fourth day of May. Frank Hanner's girlfriend, Sandra Soya testified that she was with Hanner on the 24th and 25th of April. Soya also placed Terry Hanner in the stolen automobile.

II.
Did the trial court commit reversible error by refusing to grant appellant a hearing on his motion to suppress identification testimony?
At a pretrial hearing, the court called up appellant's motion to suppress identification testimony. The motion asserted essentially that the identifications by Willie A. Keys and Officer Stanley Wright and J.P. Patel were contaminated because all three witnesses were shown photo spreads in lieu of an actual lineup, even though the defendant had already been arrested and was in custody. The trial judge stated that he had reviewed the motion and found that it did not state sufficient grounds on its face to suppress any identification testimony. The motion was overruled. At trial, only Officer Wright testified as to identification of appellant from the photographic spread. Keys did not identify the defendant.
The trial judge does not have to grant a hearing outside the presence of the jury on a motion to suppress identification testimony. In Watkins v. Sowders, 449 U.S. 341, 101 S.Ct. 654, 66 L.Ed.2d 549 (1981), the United States Supreme Court stated:
A judicial determination outside the presence of the jury of the admissibility of identification evidence may often be advisable. In some circumstances, not *309 presented here, such a determination may be constitutionally necessary. But it does not follow that the constitution requires a per se rule compelling such a procedure in every case.
449 U.S. 349, 101 S.Ct. 659, 66 L.Ed.2d 556 (1981). See also Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), York v. State, 413 So.2d 1372 (Miss. 1982), Bankston v. State, 391 So.2d 1005 (Miss. 1980). From the record, it appears that there was nothing impermissibly suggestive about the pretrial identification procedures.
Appellant also asserts that an attorney must be present during a photographic lineup, United States v. Ash, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973); Clubb v. State, 350 So.2d 693 (Miss. 1977), Stevenson v. State, 244 So.2d 30 (1971). In Clubb, supra, this Court held that there is no absolute right to have an attorney present at a post indictment photographic lineup. See also Johnson v. State, 359 So.2d 1371 (Miss. 1978), Allen v. State, 274 So.2d 136 (Miss. 1973), United States v. Ballard, 423 F.2d 127 (5 Cir.1970). Thus the absence of counsel at the photographic lineup in the case sub judice does not render the identification testimony inadmissible.
While in most cases a hearing on a motion to suppress identification testimony is the preferred procedure, it is not mandated. There is no merit in appellant's contention that the denial of an identification suppression hearing on appellant's motion was reversible error.

III.
Did the court err in overruling defendant's motion to suppress evidence?
Appellant argues that the State proved no exception to the requirement of an arrest warrant to enter the motel room, arrest the defendant, and collect evidence in plain view. Appellant therefore argues that (A) the arrest was improper and that (B) therefore, the search was unconstitutional.

A.
This Court has addressed when a warrantless arrest may be conducted. Scruggs v. State, 412 So.2d 732 (Miss. 1981); Gandy v. State, 438 So.2d 279 (Miss. 1983). In Scruggs the Court stated:
[A] warrantless arrest may be made if it is established that (1) a felony has been committed, and (2) reasonable grounds exist to suspect and believe that the person arrested committed the felony. Powell v. State, 394 So.2d 326 (Miss. 1981); Jones v. State, 358 So.2d 414 (Miss. 1978).
412 So.2d at 733.
Clearly under the facts testified to by Officers Serio and White, the state had established that a felony had been committed in the larceny of the Keys' automobile. The identifying characteristics of a black male who walked with a limp clearly connected the suspect who took the car with the man who registered at the motel. The checks which were in the stolen car were circulated in the Cleveland area and contained the same name as the man who registered at the motel. The officers had more than reasonable grounds to suspect and believe that the person within the motel room committed the felony.
The companion who first exited the room and opened the car trunk was arrested at the stolen car. Having left the motel door open, Officer White asked the appellant to exit the room which he did voluntarily. Frank Hanner acknowledged his crippled condition. Under all these facts, this Court finds that the warrantless arrest was justified and that there was no merit to this part of the assignment.

B.
As to the evidence taken by Officer White from the motel room in plain view, this Court also finds no merit. The "plain view" rule with regard to evidence seized in a warrantless search has been established by this Court: "It has long been settled that objects falling in the plain view of an officer who has the right to be in the *310 position to have that view are subject to seizure and may be introduced into evidence." Campbell v. State, 278 So.2d 420 (Miss. 1973). See also, Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Isaacks v. State, 350 So.2d 1340 (Miss. 1977).

IV.
Did the district attorney cross-examine a defense witness on an irrelevant and inflammatory matter, denying appellant a fair and impartial trial?
In his third assignment of error appellant complains that the following exchange denied appellant a fair and impartial trial:
[BY MR. DAVIS]
Well, you said you'll had a good time all night long. What did you do for a good time after the card game?
BY MR. THOMAS:
Your Honor, I object. I don't see how that's relevant. BY MR. HANNER:
It's private.
BY MR. THOMAS:
He's trying to embarrass the witness, Your Honor.
BY THE COURT:
Overrule the objection. Go ahead.
BY THE WITNESS:
You want me to answer?
BY THE COURT:
Go ahead.
BY THE WITNESS:
You are talking to me?
BY THE COURT:
Yes.
A. After we had done playing cards and drinking our beer, we went to bed.
BY MR. DAVIS, CONTINUING:
Q. And what were the sleeping arrangements?
A. Huh?
Q. What were the sleeping arrangements?
A. Frank 
BY MR. THOMAS:
Objection, Your Honor. Same reason.
BY THE COURT:
Overruled.
A. Frank slept on my couch.
Appellant cites several cases wherein the Mississippi Supreme Court reversed and remanded conviction based on "similar questioning" by the district attorney. For example, in Blair v. State, 445 So.2d 1373 (Miss. 1984) cross-examination of a defense witness brought out the fact that the witness had two children but had never been married. The Court found that the cross-examination of this witness on an irrelevant point was reversible error. The Court stated:
The veracity of a witness may not be impeached by showing her to be of unchaste character. [Cites omitted].
445 So.2d at 1376.
As this case demonstrates, it is often reversible error for the prosecution to elicit from defense witnesses or otherwise evidence concerning the witness's unchaste character, involvement in other crimes, or extraneous and prejudicial matters; but such was not the situation in the case at bar. In the case at bar the prosecution attempted to establish that the defendant was not in plain view of the witness at all times during the night he allegedly slept over at the witness's house. The exchange between the district attorney and the witness did nothing to inject evidence of the witness's unchaste character or evidence of other crimes, and it certainly did not inject extraneous and prejudicial matters irrelevant to the course of questioning. Appellant's third assignment of error is therefore without merit.

V.
Did the district attorney commit error by making improper remarks during closing argument?
Appellant contends that the following statement by the district attorney was designed solely to prejudice the jury and as such was reversible error:
Then they brought Theodore Brinson up here. You remember him, he sells drugs and steals things. He remembers his *311 daughter's birthday. That's how he knows when. He doesn't remember the day of the week. He looked at the calendar to refresh his memory. He does remember that his daughter's birthday is May 1st  the convenient birthday routine. Of course, he had to sit around up here for about a minute thinking what year his daughter was born, but he certainly remembers May 1st was a couple of days before Frank paid him to take him to Cleveland. Makes you wonder what else Frank paid him to do. He remembers that; he does not remember being in jail 
BY MR. THOMAS:
Your Honor, I am going to object to that. I think that's entirely improper.
BY THE COURT:
Sustain the objection.
The prosecution is afforded the right to argue anything in its closing that was presented as evidence. Zant v. Stephens, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). During cross-examination it was established that Brinson had been convicted of selling a controlled substance and grand larceny. The references to Brinson's memory were also established during cross-examination. The statement, "makes you wonder what else Frank paid him to do," following the statement that Hanner had paid Brinson to take him to Cleveland, may have been an improper comment, but the comment was objected to and the objection was sustained. Appellant did not request that the jury be instructed to disregard the remarks, nor did he move for a mistrial. Considering the circumstances, we hold this comment was harmless. Appellant received all that he requested. This assignment lacks merit.

VI.
Was the verdict against the overwhelming weight of the evidence and contrary to law?
In his last assignment of error appellant argues that his version of the crime should have been accepted by the jury as it was neither unreasonable or improbable. Appellant also discusses his alibi established through witnesses Brinson and Mitchell.
In the case of Winters v. State, 449 So.2d 766 (Miss. 1984) the Court stated:
[W]e will not order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice. See Rule 5.16(1) and (2), Uniform Criminal Rules of Circuit Court Practice; Pearson v. State, supra, 428 So.2d [1361] at 1364 [1983].
449 So.2d at 771. The affirmative evidence in the prosecution's case is sufficient upon which the jury could have reasonably concluded that the defendant was guilty of the larceny of Ms. Keys' automobile.
The weight of the evidence indeed supports appellant's conviction in this matter.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.