I.
This armed robbery case presents us with a fervent challenge to the eyesight, and memory of sight impressions gained *Page 959 
thereby, of the robbery victim, a Gulf Coast lawyer. Regarding the human memory as not nearly so frail as defense counsel would have us believe, we think the victim's in-court identification of the accused sufficiently reliable that it be both admissible and sufficient to undergird a conviction. For these and other reasons noted below, we affirm the judgment of conviction entered below and twenty years sentence imposed thereupon.
 II.
About 11:00 o'clock p.m. on December 22, 1982, Norman Breland, a Gulfport attorney, drove his companion home after a dinner date. After seeing her to the door, Breland returned to his car which was parked on the street. At that point two individuals later identified as Freddie Williams and Joseph Lee Robinson, Defendant below and Appellant here, emerged from the bushes. Williams put a gun to Breland's head and Robinson took Breland's arm and directed him to get in the car. Williams and Robinson rifled Breland's jacket and took approximately $112.00 and some credit cards. Breland was again ordered to get in the car and he refused, at which point the two assailants ran.
On January 6, 1983, Williams was arrested and pled guilty to the armed robbery of Breland and several others. Williams named Robinson as his compatriot on the evening of December 22, 1982, and thereafter on March 11, 1983, Robinson was charged with armed robbery in an indictment returned by the Harrison County Grand Jury. Miss. Code Ann. § 97-3-79 (Supp. 1984). Robinson entered a plea of not guilty and on June 14, 1983, his case was called for trial in the Circuit Court of the First Judicial District of Harrison County, Mississippi.
At trial Breland testified that he saw both assailants "face-on", that he looked at photographs at the police department on the evening of the robbery but did not recognize his assailants, that on or about January 10th he again viewed photographs at the Gulfport Police Department and positively identified his two assailants. At trial over defense counsel's objection Breland made an in-court identification of Joseph Robinson as one of the men who robbed him on the evening of December 22, 1982.
Robinson offered an alibi defense. His father testified that he was at home in the next room on the night of the robbery.
Freddie Williams was called as a witness by the State but to the apparent surprise of all testified that a cousin, Daryl Williams, and not Robinson, was with him on December 22 during the Breland robbery. Williams explained that he had named Joseph Lee Robinson as a part of a lie to protect Daryl Williams. The State pled surprise and was permitted to cross-examine and brought out that Williams had previously identified Robinson as his partner in crime in the Breland armed robbery on the evening of December 22, 1982.
In due course thereafter, the jury found Robinson guilty of the crime of armed robbery whereupon, on June 14, 1983, the Circuit Court sentenced Robinson to the custody of the Mississippi Department of Corrections for a period of twenty (20) years.
Robinson thereafter timely filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial challenging both the weight and sufficiency of the evidence. This motion was overruled and Robinson now appeals to this Court.
 III. A.
Robinson's principal point on appeal is his assertion that the trial judge committed error in allowing the victim, Norman Breland, to make an in-court identification of him as one of the robbers. This error, we are told, is two-fold: First, the in-court identification testimony is said to have been impermissibly tainted by prior observations by the victim of Robinson at a preliminary hearing and otherwise in violation of the principles announced in Neil v. Biggers, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401, 411 (1972). Second, Robinson *Page 960 
relies on a suggestion made in Watkins v. Sowders,449 U.S. 341, 349, 101 S.Ct. 654, 66 L.Ed.2d 549, 556 (1981) and argues that the out of the presence of the jury hearing held on his motion to suppress the in court identification testimony of the victim was constitutionally inadequate.
On May 13, 1983, a month before trial, Robinson filed a formal written pretrial motion to suppress Breland's identification testimony. The grounds stated in the motion were twofold: That Breland for a variety of reasons had no independent memory of the identity and appearance of his assailant and, second, that Breland had been allowed to view Robinson at a preliminary hearing on January 18 under circumstances that were unnecessarily suggestive.
The motion was called up and presented to the trial judge prior to the impaneling of the jury on June 13, 1983. At that time, defense counsel offered to show that the victim was unable to identify Robinson on the evening of the offense, December 22, 1982, that he was shown police photographs and was unable to identify Robinson, that at the preliminary hearing on January 18 the defendant was brought into court in an orange jumpsuit and in handcuffs and that the opportunity Breland had to observe Robinson on that occasion was unduly suggestive and substantially infected any subsequent in-court identification. The trial judge denied the motion stating
 I believe all that goes, Mr. Robinson, [name of defense counsel] to the credibility that the jury's going to give to it rather than anything we can suppress.
The problem presented by this assignment of error is familiar. The victim, Breland, saw his assailants on the evening of December 22, 1982. He also saw Robinson clothed in a prisoner's jumpsuit at the preliminary hearing held January 18, 1983. The trial was not held until June 13, 1983. Robinson's quite legitimate interest is in assuring that the in-court identification Breland made at trial was the product of his memory of Robinson's appearance on December 22, 1982, and not his memory of having seen Robinson at the intervening preliminary hearing.
The familiar jurisprudence in this area begins with the Neil
case which sets out the factors to be considered in determining whether a pre-trial confrontation of an accused by the victim was sufficiently suggestive so that the victim should not be allowed to make an in-court identification of the accused at trial. InNeil the Supreme Court stated:
 We turn, then, to the central question, whether under the "totality of the circumstances" the identification was reliable even though the confrontation procedure was suggestive. As indicated by our cases, the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.
409 U.S. at 200, 93 S.Ct. at 382.
While in most cases a pre-trial or in chambers hearing on a motion to suppress identification testimony is the preferred procedure, such is not per se constitutionally mandated.
 A judicial determination outside the presence of the jury of the admissibility of identification evidence may often be advisable. In some circumstances, not presented here, such a determination may be constitutionally necessary. But it does not follow that the constitution requires a per se rule compelling such a procedure in every case.
Watkins v. Sowders, 449 U.S. 341, 349, 101 S.Ct. 654, 659, 66 L.Ed.2d 549, 556 (1981).
The Watkins v. Sowders approach has been accepted in Hannerv. State, 465 So.2d 306, 308 (Miss. 1985). Although a pre-trial or out of the presence of the jury hearing may be the ideal procedure to determine whether or not an identification has been prompted by suggestive procedures, *Page 961 
failure to follow the ideal procedure is not necessarily violative of due process because such procedure in itself does not intrude upon a constitutionally protected interest, such as a warrantless search or improper failure to afford counsel. Millerv. State, 399 So.2d 1338, 1341 (Miss. 1981).
At trial the victim Breland testified that he saw his assailants "eyeball to eyeball". He estimated that the entire sequence of events lasted no longer than thirty seconds. Although he had had several drinks earlier in the evening, it appears that Breland was in full possession of his faculties at the time of the robbery. Norman Pope, a detective with the Gulfport Police Department who investigated the crime in the early hours of December 23, 1982, spent several hours with Breland and stated that as best he could determine, Breland was normal, was not intoxicated, and was fairly stable considering his recent armed robbery experience.
It is true that Breland did not identify Robinson from a photograph that night. The record is unclear as to whether Robinson's picture was among the ones shown Breland that night. He hesitated to say he was absolutely certain at that time, however. Breland's testimony is unequivocal, however, that the first time he saw Robinson and his partner in crime at the preliminary hearing he knew it was them. Explaining his hesitancy about the photographs, Breland stated that while, "photographs are a lot different than the real thing, . . . the first time that I saw them at that preliminary hearing I knew that was them — both of them".
The victim Breland made a positive in-court identification of Robinson as one of his assailants. The circumstances brought out on direct and cross-examination established that Breland had the opportunity to view both assailants at close range for approximately thirty seconds at the time of the crime, that his degree of attention was intense and that as a lawyer experienced in trial work he understood the importance of being able to remember what his assailants looked like, that there was no significant impairment of his faculties, that the general description he gave the police the night of the crime was substantially similar to Robinson's actual physical appearance, that Breland's level of certainty at the pretrial preliminary hearing was near absolute, and that the only reason for any uncertainty was that the photographs did not reflect Robinson's appearance on the night of the crime. Under the totality of the circumstances Breland's in-court identification of Robinson was substantially reliable, notwithstanding his having had the opportunity to observe Robinson at the preliminary hearing.
Defense counsel, of course, had broad latitude within which to cross-examine Breland regarding the reliability of his in-court identification testimony and indeed counsel took full advantage of this opportunity. For the moment it is sufficient to hold that beyond any reasonable doubt, Breland's in-court identification testimony demonstrated sufficient reliability that its weight and credibility were properly submitted for determination by the jury. Put another way, Breland's in-court identification testimony was not so shaky that it should have been suppressed and not presented to the jury.[1]
When the facts revealed by the record are compared with the facts in similar Mississippi cases, it is apparent that there was no error on the part of the trial court in overruling the motion to exclude the victim's in-court identification testimony. SeeLannom v. State, 464 So.2d 492 (Miss. 1985); York v. State,413 So.2d 1372 (Miss. 1982); Miller v. State, 399 So.2d 1338
(Miss. 1981); Bankston v. State, 391 So.2d 1005 (Miss. 1980).
 B.
The second aspect of this assignment of error is that, assuming the correctness of what has been said above, Robinson *Page 962 
was nevertheless entitled to an evidentiary hearing on his motion to suppress outside the presence of the jury. We reiterate that Robinson was given full opportunity to test the reliability of Breland's memory and ability to identify Robinson. The only question is whether this sort of evidentiary hearing should have been had prior to trial and outside the presence of the jury. While such a procedure would certainly be permissible and, even, arguably desirable in most cases, the Watkins cases decided by the Supreme Court of the United States and our following Hanner
case make clear that no such procedure is constitutionally mandated. Unless the defense makes a substantial showing (atwhatever stage of the proceedings he is allowed to test the memory of the witness) that a pretrial confrontation between victim and witness has infected the witness' ability to identify the defendant, no pretrial or in camera hearing is required.
The point is brought home by a consideration of what is done at such a Neil v. Biggers suppression hearing: defense counsel seeks to undermine the credibility of the victim's identification testimony. This is precisely what defense counsel does in open court before the jury. Indeed, it is difficult to imagine that defense counsel's attack upon the victim's memory would be much different before the jury than at a suppression hearing in chambers.
In the case at bar there is no reversible error here in that the victim's ability to identify Robinson easily passed theNeil test.[2] When reviewing a point such as this on appeal, we look at the entire record. Where, as here, it appears that the victim/witness gave a positive in-court identification of the defendant and where the State met with flying colors the criteria set out in the Neil decision, we will not reverse because the credibility of the in-court identification was tested before the jury rather than outside the hearing of the jury.
 IV.
Robinson's next assignment of error is that the trial judge committed reversible error when he refused a jury instruction to the effect that eyewitness testimony should be viewed with caution and when he refused to modify jury instructions requested by the defendant.
The record reflects that the trial judge refused all of Robinson's pre-filed jury instructions because they were not in proper form. The trial judge advised defense counsel to consult the Model Jury Instruction book and resubmit instructions on: (1) Failure of the defendant to testify; (2) the alibi defense; (3) the state's burden of proof and (4) the fact that an indictment does not imply guilt. The defense attorney offered three instructions on eyewitness testimony, these were refused because they were not in proper form and because they were argumentative.
Considering the latter point first, we know of no rule of law or standard of evidence which requires that identification testimony be viewed with caution and that juries be instructed to that effect. Our cases on the point expressly hold that such an instruction should not be given. Hines v. State,339 So.2d 56, 58 (Miss. 1976); Clubb v. State, 350 So.2d 693, 697 (Miss. 1977); Ragan v. State, 318 So.2d 879, 882 (Miss. 1975).
Robinson's counsel seems not to have perceived that this point is covered by the general instruction given the jury to the effect that the State had the burden of proving each element of the offense charged beyond a reasonable doubt. See Instructions Nos. C.13S. If there be a reasonable doubt that the victim has correctly identified the accused as his assailant, this general instruction tells the jury it should acquit. *Page 963 
At least three other instructions presented to the jury covered the point. Instruction No. S-1 outlined the elements of the offense, including identity of Joseph Lee Robinson as the person who robbed Norman Breland, and advised the jury that each such element had to be proved "beyond a reasonable doubt". Instruction No. D3B covered Robinson's alibi defense and concluded with these words
 if the evidence or lack of evidence in this case raises in the minds of the jury a reasonable doubt as to whether the defendant was present and committed the crime, then you must give him the benefit of the doubt and acquit him.
Finally, Instruction No. D4B advised the jury that the indictment was not evidence and that Robinson
 is presumed to be innocent until proven guilty beyond a reasonable doubt.
Viewing as a whole the instruction given the jury, we hold that the jury was fairly advised of the law regarding that admittedly critical element of the State's case: that Joseph Lee Robinson was on the scene on December 22, 1982, and participated in the armed robbery of Norman Breland. On no less than four occasions — Instructions Nos. C.13S, S-1, D3B, and D4B — the jury was told that, if the State had failed to prove beyond a reasonabledoubt each element of the offense charged, it should acquit. This is enough.
The rest of Robinson's assignment of error — that the trial judge erred in refusing and/or refusing to correct or modify some eight other instructions requested but refused — has been all but ignored in his brief. We have nevertheless reviewed the entire charge submitted to the jury and find that it fairly and adequately submits the relevant issues presented. The assignment of error is denied.
 V.
Near the end of his proof, the defense attorney called Deputy John Nix from the Harrison County Sheriff's Department. Deputy Nix was called to show that on one or more occasions Joseph Lee Robinson had been placed in lineups as the result of statements made by Freddie Williams, that during the course of those lineups he was not identified, and upon questioning, Freddie Williams admitted that Robinson was not involved in those other robberies. Defense counsel argued that this testimony was admissible to show the prior conduct of the state's witness. The court sustained the state's objection to Deputy Nix's testimony on the grounds that it was merely cumulative and bolstering.
Wide latitude should be allowed one accused of a crime as regards the presentation of witnesses in his defense. The mere fact that evidence offered by a defendant may be cumulative is no reason for its exclusion. See Richardson v. State,436 So.2d 790 (Miss. 1983); Tubbs v. State, 402 So.2d 830 (Miss. 1981). On the other hand, the trial judge is not without discretion in such matters, particularly where as here the proffered testimony would have gone to a collateral issue — the credibility of the co-felon, Freddie Williams — and where that testimony would likely have put before the jury references to other crimes beyond the scope of the instant indictment.
Deputy John Nix was being offered to impeach the credibility of the co-defendant, Freddie Williams. As defense counsel had adequate opportunity to cross-examine Williams, and did in fact question him concerning his prior implication of and later recantation of persons other than Robinson, in criminal activities, the testimony he sought to obtain from witness Nix was in fact, as the trial judge indicated, cumulative. Put another way, there is nothing Nix would have testified to that had not already been admitted by Williams. Under these circumstances — and while we could hardly have been critical of the trial judge had he allowed Deputy Nix to be called, there has been no abuse of discretion. The assignment of error is denied.
 VI.
Robinson finally assigns as error the trial judge's refusal to grant his motion for *Page 964 
judgment of acquittal notwithstanding the verdict of the jury or, in the alternative, for a new trial. Where such a matter is tendered to us for appellate review, our scope of review is severely limited.
Where a defendant has after conviction moved for a judgment of acquittal notwithstanding the verdict, the trial judge must consider all of the evidence — not just the evidence which supports the State's case — in the light most favorable to the State. May v. State, 460 So.2d 778, 781 (Miss. 1984). The evidence which supports the case of the State must be taken as true. Warn v. State, 349 So.2d 1055, 1056 (Miss. 1977). The State must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Glass v. State,278 So.2d 384, 386 (Miss. 1973). If the facts and inferences so considered point in favor of the defendant with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty, granting the judgment notwithstanding the verdict is required. On the other hand, if there is substantial evidence opposed to the motion — that is, evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fairminded men in the exercise of impartial judgment might reach different conclusions — the motion should be denied.
When the standards described above are applied to the evidence in this case, affirmance on this assignment of error is required. The testimony of Norman Breland, the victim, supplemented by the recanted testimony of Freddie Williams, are more than sufficient unto the day. The trial judge correctly denied Robinson's request for a peremptory instruction as well as his subsequent motion for judgment of acquittal notwithstanding the verdict.
Robinson's alternative motion for a new trial invokes Rule 5.16 of our Uniform Criminal Rules of Circuit Court Practice which authorize the trial judge to grant a new trial if required in the interest of justice or if the verdict is contrary to law or the weight of the evidence. Under our established case law, however, the trial judge should set aside a jury's verdict only when, in the exercise of his sound discretion, he is convinced that the verdict is contrary to the substantial weight of the evidence.May v. State, 460 So.2d 778, 781 (Miss. 1984); Groseclose v.State, 440 So.2d 297, 300 (Miss. 1983); Pearson v. State,428 So.2d 1361, 1364 (Miss. 1983). There being substantial evidence in this record that Joseph Lee Robinson was an active participant in all aspects of the armed robbery of Norman Breland on December 22, 1982, we may only conclude that the trial judge acted well within his discretion when he denied Robinson's alternative motion for a new trial.
AFFIRMED
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.
[1] Breland's testimony was quite credible. His appearance as a witness gives the lie to the late Justice Robert H. Jackson's familiar aphorism that a lawyer "is almost invariably a poor witness". Hickman v. Taylor, 329 U.S. 495, 517, 67 S.Ct. 385, 396, 91 L.Ed. 451, 465 (1947).
[2] Where, however, the in-court identification is made without a pre-trial or in chambers hearing and where the witness flunks the Neil test, a mistrial will often be the only acceptable antidote. For this reason, the better practice when issues underNeil v. Biggers are tendered is the holding of a hearing on those issues pre-trial or outside the presence of the jury.