483 So.2d 684 (1986)
Archie Leon HOLMES, Jr.
v.
STATE of Mississippi.
No. 55921.
Supreme Court of Mississippi.
January 29, 1986.
Rehearing Denied March 12, 1986.
*685 Jimmy D. McGuire, Gulfport, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by John H. Emfinger, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and PRATHER, JJ.
DAN M. LEE, Justice, for the Court:
Archie Leon Holmes, Jr. was indicted in the First Judicial District of Harrison County and charged with the murder of Timothy Ray Albert. On March 9, 1983, after three days of trial, Holmes was found guilty of murder and sentenced to life inprisonment in the Mississippi State Penitentiary.
On July 10, 1982, between 4:00 and 5:00 p.m., Archie Leon Holmes, in search of his girlfriend, Michelle Montgomery, went to the house trailer of Tim Albert. Albert told Holmes that he had given Montgomery a ride to Biloxi earlier but that he did not know her exact whereabouts at that time. Apparently satisfied, Holmes left the trailer and went to a nearby lounge where he danced and drank until sometime near midnight.
Holmes returned to Albert's trailer early on July 11, at about 1:00 a.m. At that time Tim Albert; his brother, John; a friend, Mike Jackson; and Holmes's girlfriend, Michelle Montgomery, were present at the trailer. Tim Albert met Holmes outside the trailer and a fight ensued during which Holmes pulled a knife on Albert. Holmes claims that during the scuffle he severely cut his own finger. Holmes was subdued by Tim Albert and the others who also summoned the police. After the police arrived and calmed the combatants, the two shook hands and Holmes left.
Holmes maintains that he then went to his mother's house, nursed his wounded finger and slept until he was awakened by police officers sometime after 6:00 a.m. Holmes's mother corroborates his story.
*686 At about 2:00 to 2:30 a.m. that same evening, Tim Albert, Michelle Montgomery and another friend, Vivian Kekahuna, were sitting in the house trailer drinking beer. A shot was fired from outside the trailer, through a kitchen window and into the room where the three sat. All three immediately dove to the floor. After a few moments, Tim Albert stood up, peered out the window and said something to the effect of "Leon, I'm gonna kill you." Another shot was fired; it struck Tim Albert in the forehead.
At about the same time, John Albert (who had been present during the earlier fracas) and two friends were driving over to check on John's brother, Tim Albert. As they approached the vicinity of the trailer, they heard a sound similar to the report of a firecracker. They drove through an alley behind the trailer in order to see what was happening. They saw Archie Leon Holmes standing outside the trailer, breaking glass out of the kitchen window using what appeared to be a gun barrel. The three immediately drove to a nearby grocery store and used a pay phone to call the police. Subsequently, they followed the police to the trailer where they saw Tim Albert lying on the floor and the two women crying.
Police Detective John Dawson was called to the scene at approximately 3:00 a.m. He took photographs of the crime scene, one of which will be discussed infra. He also found two.22-caliber "short" cartridges on the ground outside Albert's trailer, underneath the kitchen window.
A Biloxi police officer was sent to the home of Holmes's mother at approximately 4:00 to 4:30 a.m. in an effort to locate Holmes's dark green Ford automobile. It was not there at that time.
After 6:00 a.m., officers returned to the home of Holmes's mother and found Holmes's car parked nearby. Holmes was in the house, asleep.
Tim Albert was kept alive on a ventilator until he was determined to be brain dead. His death was caused by a small caliber gunshot wound. The weapon which caused that wound was never found.

I.
At trial Holmes submitted the following manslaughter instruction to be given to the jury:
JURY INSTRUCTION NO. D-10
The Court instructs the Jury that before you can find the accused, ARCHIE LEON HOLMES, JR., guilty of manslaughter, you must find from all the evidence in this case the following elements to-wit:
A. That ARCHIE LEON HOLMES, aided, abetted, procured, assisted, actively participated or counseled another to kill TIMOTHY RAY ALBERT.
B. That ARCHIE LEON HOLMES, JR., committed an overt act without malice in the heat of passion, by the use of a dangerous weapon, without authority of law, and not in necessary self-defense.
C. That ARCHIE LEON HOLMES, JR., committed an overt act with the intent to cause the death of TIMOTHY RAY ALBERT or he purposely incited or encouraged another to kill TIMOTHY RAY ALBERT.
If the prosecution fails to prove any one of the above elements, they you shall find the accused, NOT GUILTY.
The trial court refused to give the instruction, a decision which Holmes asserts was error. We do not agree. The instruction is erroneous, confusing and misleading; it tracks three different manslaughter statutes, then states that the prosecution must prove them all.
This Court has repeatedly condemned confusing and misleading instructions. Scott v. State, 446 So.2d 580 (Miss. 1984); Groseclose v. State, 440 So.2d 297 (Miss. 1983); Caldwell v. State, 347 So.2d 1389 (Miss. 1977). We hold that Instruction D-10 was properly refused.
Holmes also submitted cautionary jury instructions regarding eyewitness identification testimony. Those instructions likewise were refused; Holmes contends *687 that they should have been granted. This Court, in Robinson v. State, 473 So.2d 957 (Miss. 1985) most recently addressed that very issue.
[W]e know of no rule of law or standard of evidence which requires that identification testimony be viewed with caution and that juries be instructed to that effect. Our cases on the point expressly hold that such an instruction should not be given. Hines v. State, 339 So.2d 56, 58 (Miss. 1976); Clubb v. State, 350 So.2d 693, 697 (Miss. 1977); Ragan v. State, 318 So.2d 879, 882 (Miss. 1975). (emphasis in original)
Robinson, 473 So.2d at 962. See also, Irving v. State, 361 So.2d 1360, 1371 (Miss. 1978). The trial court committed no error by refusing Holmes's cautionary instructions.

II.
During the trial, Holmes's counsel called Robert Clark, a private investigator, as a witness. Clark testified that, on the evening after Tim Albert was shot, he was sent by Holmes's attorney to take pictures of the crime scene. The pictures, however, did not come out. Clark was asked what, at the crime scene, he was "able to see in the darkness in the month of July of 1982." Opposing counsel objected on the basis that that could or could not be seen on any night other than the night in question was irrelevant. The trial court noted that Clark could not testify as to the conditions at the time the killing took place and sustained the objection.
On appeal, Holmes asserts that he was "denied the fundamental right under the sixth amendment of the United States Constitution to have compulsory process to call witnesses in his favor and that the failure of the court to allow this witness to give his testimony denied him a right to rebutt (sic) the testimony of the three witnesses ... believed by the jury." (appellant's brief, 7-8) He fails to cite any authority for the proposition that Clark's testimony was relevant.
As a general rule, unsupported assignments of error are not considered on appeal. Harmon v. State, 453 So.2d 710 (Miss. 1984); Smith v. State, 430 So.2d 406 (Miss. 1983); Gandy v. State, 373 So.2d 1042 (Miss. 1979); Ramseur v. State, 368 So.2d 842 (Miss. 1979). We are, therefore, not required to pass on the possible relevancy of Clark's proffered testimony. The record rebuts Holmes's assertion that he was denied process to call witnesses on his favor; Clark was called as a witness. The fact that evidentiary rules may have restrained Clark's testimony was not, in itself, violative of Holmes's sixth amendment rights. This assignment is without merit.

III.
The trial judge allowed into evidence numerous photographs taken at the crime scene. Holmes here complains of State's Exhibit No. 1, a photograph which showed the front exterior of the victim's trailer, a light pole, a tree, a car, a van and other physical objects as viewed from the street near Albert's trailer. The photograph, made shortly after the killing occurred, was taken by a detective in the course of his investigation. A flash was used to light the scene. Another investigating officer is visible in the picture, standing near the window through which the shots were fired. All of the witnesses who used State's Exhibit No. 1 in the course of their testimony pointed out that, except for the additional light in the presence of the police officer, the photo was a fair and accurate depiction of the scene.
Holmes cites four cases where the admission into evidence of staged or posed photographs was held to be reversible error: May v. State, 199 So.2d 635 (Miss. 1967); Martin v. State, 217 Miss. 506, 64 So.2d 629 (1953); Brett v. State, 94 Miss. 669, 47 So. 781 (1908); Fore v. State, 75 Miss. 727, 23 So. 710 (1898). In those cases, persons and objects were carefully arranged so as to later depict the crime scene as described by certain witnesses. Those reenactments, (sometimes referred to as "tableaux vivants") were then photographed and introduced *688 at trial. Other witnesses (who lacked the persuasive assistance of such staged photographs) disputed the relative positions of persons and objects as depicted.
In the instant case, there took place no subsequent rearrangement of persons and objects at the scene; the photograph was made at the scene shortly after the killing occurred. The presence of the officer and the additional light was carefully explained to the jury each time the photograph was used.
The photograph had probative value in that it clarified the testimony regarding the crime scene; it depicted no more than the testimony indicated. See Wiley v. State, 449 So.2d 756, 760 (Miss. 1984); Wall v. State, 413 So.2d 1014 (Miss. 1982) cert. denied 459 U.S. 870, 103 S.Ct. 155, 74 L.Ed.2d 129 (1982). It was properly admitted into evidence.
Finding no error, we affirm the judgment of the trial court.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.