406 So.2d 805 (1981)
Stephen GREENE
v.
STATE of Mississippi.
No. 52953.
Supreme Court of Mississippi.
December 2, 1981.
*806 Boerner & Underwood, William D. Boerner, Brookhaven, for appellant.
Bill Allain, Atty. Gen. by Frankie Walton White, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before SMITH, P.J., and BROOM and HAWKINS, JJ.
BROOM, Justice, for the Court:
Grand larceny is the offense for which the defendant/appellant Stephen Greene was charged and convicted in the Circuit Court of Amite County. The indictment charged that Samuel Case, Roger Case and Stephen Greene "acting in concert each with the others" stole certain copper wire, the property of Mississippi Power & Light Company (MP & L herein). Defendant Greene was sentenced to serve a term of two years in the custody of the Department of Corrections. On appeal, he argues: (1) he was wrongfully denied a continuance, (2) he should have been allowed to make challenges for cause to prospective jurors in chambers rather than in open court, (3) erroneous evidentiary rulings were made by the trial judge, (4) witness Varnado was erroneously allowed to testify as to the cost of the wire, (5) testimony of co-indictee Roger Case was erroneously allowed, (6) the evidence was insufficient, and (7) the lower court erred in overruling his objections to the state's jury instruction. We affirm.
The following facts are established by the testimony. One of MP & L's employees was travelling on a public highway in Amite County during the night of April 3, 1980, and observed a pick-up truck parked by the road with a ladder up against a utility pole. This employee, Bob Duncan, notified law *807 officers who came to the scene and found several rolls of wire together with the ladder and a blue and white Chevrolet pick-up with a Lincoln County license. The truck was owned by Samuel Case. A search was launched for the suspect, and Roger Case was taken into custody early the next morning as he walked down a highway some seven or eight miles away from the scene. Defendant/appellant Stephen Greene was found and taken into custody at approximately midnight as he walked along the highway about two miles from the scene. He was wearing jogging shoes and blue jeans  wet from the knees down.
Roger and Samuel Case, who were jointly indicted along with the defendant Greene, pled guilty to the charge and at trial were state's witnesses. According to the testimony of Roger, he was searching for wire along with his brother Samuel and the defendant Greene. Roger testified that the defendant helped take the wire over the fence, but later he equivocated and indicated uncertainty as to whether the defendant helped him, and stated it was so dark that he could not see the defendant. Substance of Samuel Case's testimony was that Roger and the defendant were with him and hunting wire on the night in question. Samuel testified he climbed the ladder and cut the wire, but he was unable to say who rolled the wire because he "was watching the electricity."
First argument made is that the trial judge erred in refusing to grant defendant a continuance. Primarily, the motion focused upon the assertion that the state failed to timely provide the defendant with copies of jury instructions in accordance with the 24-hour prefiling rule and failed to "produce certain essential information" which the defendant had requested by prior motion. The long established rule in this jurisdiction is that trial judges have vested in them broad discretionary powers in granting or refusing to grant a continuance. Miss. Code Ann. § 99-15-29 (1972). The appeal before us does not have in it a record of proceedings or evidence presented showing prejudice to the defendant in support of the motion for continuance, and upon such a record we are unwilling to hold that the lower court acted erroneously in denying the continuance.
The second argument of the defendant is that he was erroneously not allowed to make his challenges for cause to prospective jurors in chambers instead of in the presence of the jury in open court. The record shows that the defendant asked the trial court to allow him to make his challenges for cause in chambers and not in open court. In actuality, counsel at oral argument stated that he made no challenges for cause. In his brief, the defendant correctly notes that "this Court has no way to actually review the questions, answers or demeanor of each of said members of the jury panel pursuant to said questioning due to the fact that the voir dire examination was not taken down, much less transcribed." Since the record does not contain the dialogue between the court and the jurors, it is impossible for us at the appellate level to ascertain whether any juror was prejudiced because of partiality and therefore erroneously allowed to remain on the jury. The burden of making a record to reflect partiality or impropriety regarding the selection of jurors rests upon the complaining litigant (defendant here). Skelton v. Kindred, 279 So.2d 642, 644 (Miss. 1973). Absent any record of the proceedings that developed in the jury selection process, we are unable to say that the jurors selected were unfair or prejudiced in any respect. The defendant correctly cites Peters v. State, 314 So.2d 724, 728 (Miss. 1975) where we did state that it is "a much better system for the trial court to conduct the discussion as to the jury challenges in an anteroom." We also stated in Peters:
It is not necessary for the attorneys to call their individual names in public and to advise them that they are not wanted as jurors. It is far better for the trial Judge to announce the names of the jurors selected rather than the names of the jurors rejected. (Emphasis added.) Id. at 729.
*808 Although, as stated in Peters, it is the better practice in criminal cases for the trial judge to hear challenges for cause in chambers rather than in open court, the record does not show that the defendant was prejudiced in any way. Accordingly, the argument made about the request to make challenges to jurors in chambers does not require reversal.
Thirdly, the defendant argues that the lower court erred in overruling his objections concerning the introduction of physical evidence. Assertion is made by the defendant that in developing its case the state failed to "establish any chain of custody, but merely asked the witness, Chief Leroy Smith, to identify the wire." There was no error because the items complained of were never actually admitted into evidence but were merely marked for identification purposes. Likewise, there was no request (which could have been made outside the jury's presence) that the physical evidence be removed from the courtroom.
Fourth argument made by the defendant is that the lower court erred in allowing testimony about the cost or value of the stolen wire in question. Complaint is made that a part of state witness Omar Varnado's testimony as to the value of the wire was hearsay. When the defendant's objection was made to the testimony, the court was considering the matter and discussing it at which time the state withdrew the question propounded, and then qualified the witness Sturgeon to testify as to the value of the wire in question. Sturgeon's testimony established that he had sold copper wire before for as high a price as ninety cents and during the week before trial had sold wire for sixty-five cents. The following is excerpted from Sturgeon's testimony:
Q. Were you able to ascertain the value of copper on April the 4th?
A. Yes, Sir.
Q. And what was that figure, Sir?
BY MR. BOERNER:
Objection, Your Honor.
A. Seventy-five cents a pound.
BY THE COURT:
Overrule your objection.
The substance of Varnado's testimony was that he had sold scrap copper wire to different buyers at different times for different prices. Based upon his testimony, we think the lower court acted within its discretion in allowing him to give his estimate of value of the wire. After his testimony, there was no other testimony or cross-examination of him in impeachment or in contradiction of his testimony concerning the value of copper. His testimony was not hearsay, and we think the trial court properly allowed the testimony to go to the jury.
As to his fifth argument, the defendant asserts that the trial court erred in allowing the jury to hear the testimony of co-indictee Roger Case. Outside the jury's presence, Roger was examined by the state and testified that the defendant was with him for the purpose of hunting wire and that the defendant helped him take the wire over a fence. On cross-examination still outside the jury's presence, Roger testified that no one had threatened him and thereby compelled him to testify against the defendant. His testimony was that all three of the co-indictees were concerned with getting the wire. After a luncheon break and still on cross-examination Roger equivocated his testimony somewhat and stated that it was dark where the wire was taken and he could not see the defendant and that the defendant did not help him. Then the court of its own motion carefully examined Roger and elicited from him testimony that no one had intimidated him and that his purpose was simply to tell the whole complete truth. Then in the presence of the jury, Roger again testified and stated essentially the same as he had testified outside the jury's presence except he declined to specifically testify that defendant Greene helped him. The record also shows that outside the jury's presence on cross-examination Roger said that he had pled guilty to the charge and was given a fine of $1,000 and a one-year suspended sentence with probation. He also indicated that he had been drinking on the night of the crime and had passed out on the way to the place where the wire was taken.
*809 The defendant correctly states the rule that testimony of a co-defendant is to be viewed with great caution and suspicion and where uncorroborated it must be reasonable, and not improbable, self-contradictory or substantially impeached. Parker v. State, 378 So.2d 662 (Miss. 1980); Moody v. State, 371 So.2d 408 (Miss. 1979); Jones v. State, 368 So.2d 1265 (Miss. 1979); Feranda v. State, 267 So.2d 305 (Miss. 1972). Although the defendant states the correct rule, at trial the record shows no request for any instruction to advise the jury that they should view Roger Case's testimony with great caution and suspicion. Having failed to request such an instruction, he is not in a position now to obtain reversal on this basis.
Sixth argument of the defendant is his contention that he was erroneously denied his request for a directed verdict, and that the verdict was against the overwhelming weight of the evidence. Review of the testimony indicates that MP & L employee Duncan on the night of April 3, 1980, discovered a pick-up truck and an aluminum ladder against the utility pole at the scene. When he returned to the scene after notifying law officers, several rolls of MP & L wire were found on the ground. Search for the suspect thief or thieves resulted in the arrest of Roger Case walking down a highway seven or eight miles away on the next morning. The defendant was spotted and taken into custody about midnight wearing blue jeans (wet from the knees down) at a place about two miles from the scene where the wire was found. Roger Case, one of the co-indictees, testified that the three of them, including the defendant, were in Amite County hunting wire. He said they located wire and his brother Sammy Case was the one who stood on the aluminum ladder and cut the wire down. Thus Roger established that the defendant, who participated in hunting wire, was present at the scene although Roger was unable to see what the defendant was doing. Samuel Case, also a co-indictee, testified that on the night of April 3, he and the other two were out to steal wire and according to him the defendant was with them although he was not specific as to just what part in the transaction was done by the defendant.
We agree that the testimony against the defendant was not as clear and specific as it could have been had the occurrence taken place during the daytime. Nevertheless, we think the testimony was sufficient to justify the trial judge's action in refusing to grant a directed verdict. Having heard the evidence which was presented, we think the jury had the prerogative to accept or reject the case made out by the state (the defendant did not testify) and resolve the issue adversely to the defendant. In passing upon the weight and worth of the testimony, and having heard the equivocation of the witness Roger Case, we are unable to say that the jury acted irrationally or that their verdict of guilty was not adequately supported by the evidence.
Seventh and final argument made is the contention that the trial judge erroneously overruled the defendant's objection to the state's instructions. The crux of the argument is that the state did not prefile its jury instructions in accordance with Miss. Uniform Crim.R. of Cir.Ct.Pract.R. 5.03 (1979) and that therefore he was denied adequate time within which to review the instructions and make objections to them. The record does show that well thought out objections were made by defense counsel to the instructions which the state presented to the court. Perusal of the record does not reveal any showing that the defendant was prejudiced or harmed by the failure of the state to prefile its instructions. There being no indication from the record as to how or in what manner the defendant was prejudiced, the trial judge's failure to require prefiling of the instructions does not constitute reversible error. Gray v. State, 387 So.2d 101 (Miss. 1980); Ferrill v. State, 267 So.2d 813 (Miss. 1972).
Our conclusion is that the evidence, as the jury found, established the defendant's guilt beyond a reasonable doubt and, no reversible error being established, affirmance is required.
AFFIRMED.
*810 PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, LEE, BOWLING and HAWKINS, JJ. concur.