538 So.2d 1186 (1989)
Walter O'Neal JACKSON
v.
STATE of Mississippi.
No. 58251.
Supreme Court of Mississippi.
February 1, 1989.
*1187 Thomas D. Berry, Jr., Gulfport, for appellant.
Mike Moore, Atty. Gen., by Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and ROBERTSON and ANDERSON, JJ.
ROBERTSON, Justice, for the Court:

I.
This appeal of a conviction of sale of an illegal controlled substance presents a somewhat novel juxtaposition of two familiar issues in criminal procedural jurisprudence: the charges that the accused was unfairly denied a continuance of his trial, resulting in ineffective assistance of counsel. The factual predicate for the two claims is identical. Because the accused wholly failed to assist counsel in assisting him in preparation for trial and because the accused has wholly failed to demonstrate any legally cognizable prejudice in spite of being given full opportunity to show such, we affirm.

II.
Walter O'Neal Jackson, late of Harrison County, Mississippi, was on August 15, 1985, some thirty-one years of age. On that date, Jackson was the star of four photographs taken in front of Tim's Motel, Highway 49 in Gulfport, Mississippi. Rather than a screen test, however, the shots were apparently taken to record an undercover drug sting, with Jackson providing two sets of T's and Blues, and Officers J. Kuhn, Greg Richardson and "Jerry Curl" Langford buying the sets and snapping the photos.
Jackson was formally charged with sale of pentazocine, a Schedule II controlled substance, Miss. Code Ann. §§ 41-29-115(A)(d)(6) and -139(a)(1) (Supp. 1988), in an indictment returned by the Harrison County Grand Jury on May 7, 1986. The indictment further charged that Jackson was an habitual offender by reason of two previous felony convictions. On May 30, 1986, Jackson appeared in Circuit Court for arraignment. Upon finding Jackson indigent, the Court appointed counsel to represent him on the pending charge. Jackson entered a plea of not guilty and signed an acknowledgment that he understood that his trial was scheduled for June 16, 1986. On June 11, 1986, Jackson, acting through counsel, moved for a continuance. The motion was denied on the morning of June 16, 1986. That same date the case proceeded to trial, at the conclusion of which the jury returned a verdict that Jackson was guilty as charged.
At the recidivism hearing thereafter, the evidence reflected that on October 21, 1983, Jackson had been convicted in the Circuit Court of Jackson County, Mississippi, of the crime of felonious shoplifting, and that on May 17, 1983, he had been convicted in the Circuit Court of the Second Judicial District of Harrison County, Mississippi, of grand larceny. Jackson was sentenced as an habitual offender to serve a term of thirty (30) years in the custody of the Mississippi Department of Corrections without eligibility for parole or probation. See Miss. Code Ann. §§ 41-29-139(b)(1) and 99-19-91 (1972 and Supp. 1988). In addition, the Court fined Jackson One Million Dollars ($1,000,000.00) and immediately thereafter suspended the fine.
Jackson timely moved for a new trial, complaining of denial of his request for a continuance and ineffective assistance of counsel at his trial. He was afforded a full evidentiary hearing on September 29, 1986, at which he appeared with new counsel. In the end, the motion was denied. Jackson now appeals to this Court.

III.
On this appeal Jackson argues that the Circuit Court abused its discretion when it denied his motion for a continuance and that he was denied effective assistance of counsel at his trial. The factual basis for the two points is essentially the same.

*1188 A.
On Friday, May 30, 1986, Jackson appeared in Circuit Court for arraignment. At that time the Court appointed Raiford L. Pittman, Esq., of Gulfport, Mississippi, to defend him. Pittman conferred briefly with his newly acquired client, whereupon Jackson entered a plea of not guilty to the charge. So far, so good. Immediately thereafter, Pittman advised Jackson to come by his office on Monday or Tuesday of the following week to confer further about preparation for trial. At the time Jackson was at liberty on a property bond. There is no question but that at that time both Jackson and Pittman knew that the case was set for trial on June 16, 1986.
Jackson did not appear at Pittman's office during the following week. In fact, Pittman and Jackson did not see each other or talk again until a few minutes before the trial commenced on Monday morning, June 16. It appears that shortly after leaving the courthouse following his arraignment  the exact time and date are not in the record  Jackson was arrested on an unrelated charge by an officer of the Ocean Springs Police Department and was incarcerated in the Ocean Springs City Jail continually up to the morning of June 16. Both defense counsel Pittman and the assistant district attorney in charge of the prosecution stated to the Court that they had no knowledge of Jackson's whereabouts until the morning of trial. On that morning, the assistant district attorney learned of Jackson's detention in Ocean Springs and procured his release so that he could attend his trial in Gulfport, Mississippi.[1]
When Jackson did not contact him in the week following the arraignment, Pittman began efforts to locate Jackson but those efforts were unsuccessful. When by June 11 he had not been able to find Jackson, Pittman filed the motion for continuance. Wanda Smith, Jackson's sister, who had appeared as surety on a property bond filed to secure Jackson's release pending trial, said that she learned that Jackson was in jail in Ocean Springs on about June 5 or 6. She said she received a letter from Pittman's office inquiring about Jackson's whereabouts and that she called in response and advised Pittman's secretary that Jackson was in jail. Pittman says this information never got to him and, specifically, that he received no messages from his secretary or anyone in his office that Jackson was in jail.
Pittman testified that he had no opportunity to prepare for trial. He acknowledges, however, that he had obtained and inspected the photographs the prosecution planned to use in evidence. He had been advised that the prosecution would call law enforcement witnesses, and he contacted these potential witnesses, but they refused to talk with him. Pittman prepared and pre-filed proposed jury instructions.
We are presented the innuendo that Jackson was not allowed by Ocean Springs officials communications with the outside world. Jackson himself testified at the hearing for a new trial on two separate occasions. He never stated anything remotely suggesting that he had sought to call his attorney or anyone else and had been denied that privilege. Jackson did not take the stand in his own defense at trial, but at the motion for new trial completely denied his guilt. He acknowledged, however, that he had no witnesses who could have supported his defense. In sum, in spite of being given full opportunity to do so, Jackson failed at the motion for a new trial  which was held over three months after his trial  to offer any evidence or theory of defense which might have aided his cause and which might have been available to him had counsel been given a greater opportunity to prepare for trial.

B.
The standards our courts employ when one criminally accused requests a continuance may be found in Miss. Code Ann. *1189 § 99-15-29 (1972).[2] The granting or denial of a continuance rests within the sound discretion of the trial judge. Arteigapiloto v. State, 496 So.2d 681 (Miss. 1986); Gates v. State, 484 So.2d 1002 (Miss. 1986); Oates v. State, 421 So.2d 1025 (Miss. 1982); Smith v. State, 463 So.2d 1102, 1003 (Miss. 1985).
Our dispositive inquiry is whether denial of Jackson's motion for a continuance resulted in substantial prejudice to his right to a fair opportunity to prepare and present his defense. Indeed, the last line of Section 99-15-29 reads
[D]enial of continuance shall not be grounds for reversal unless the Supreme Court shall be satisfied that injustice resulted therefrom.
No one disputes Pittman and Jackson conferred for no more than ten minutes total. What is contested is the thought of resulting prejudice.
Four witnesses, three of whom were eyewitnesses, testified at trial. Photographs were introduced purporting to show the drug exchange. These do indeed show Jackson coming out of a motel room and approaching a van. No transaction is portrayed, nor any drugs or money.
We have repeatedly affirmed denials of continuances where it appeared the appellant was not prejudiced substantially by the denial. In an armed robbery trial where counsel was appointed four days before trial, a denial was affirmed because "the facts in this case did not present a complicated factual situation and no complicated legal problems were involved. Appellant admitted taking part in the crime and the jury found against her on her defense of duress. The record revealed that appellant received a fair and impartial trial during which she was ably and vigorously defended." Brown v. State, 252 So.2d 885, 888 (Miss. 1971). See also Blair v. State, 445 So.2d 1373 (Miss. 1984); and Greene v. State, 406 So.2d 805, 807 (Miss. 1981).
No doubt at times ad hoc determinations of prejudice may be quite problematical. See the observation in Box v. State, 437 So.2d 19, 24 (Miss. 1983) (Robertson, J., concurring):
This Court is not in a position to decide that a tardy disclosure of the witness or evidence has or has not resulted in unfair surprise or prejudice to the defendant. This Court has only the cold record to review. That the record does not affirmatively reflect prejudice does not logically demonstrate that there has been none. Where there is prejudice, it more than likely will pertain to matters that will not be reflected in the record. The line of questioning defense counsel failed to pursue because he did not have time to prepare will not be reflected in the record. The rebuttal witness who could have impeached the State's new-found witness, but he was not found because the defense had no time to get out and search for him will not be in the record. There are numerous other similar examples of actual prejudice that will necessarily not be disclosed in the record, but which the experienced trial lawyer will readily call to mind.
Box, 437 So.2d at 24.
This case is different. At a hearing held more than three months after trial, Jackson was given full opportunity to explain to the Court how the Circuit Court's failure to grant a continuance prejudiced *1190 his opportunity to defend against the charge. Both he and trial attorney Pittman testified fully. We have reviewed that testimony carefully and find no suggestion of any viable basis in law or fact for a defense to the charge other than what was in fact made at trial. Under these circumstances we refuse to hold that the Circuit Court abused his discretion when he denied Jackson's motion for a new trial.
We have considered with some care the suggestion that Jackson was effectively prevented by Ocean Springs police authorities from calling Pittman. Our law affords persons incarcerated in this state an enforceable protection from unreasonable incommunicado detention. Scarborough v. State, 261 So.2d 475, 479 (Miss. 1972). We will not infer that Ocean Springs authorities violated Jackson's right in this regard. Pittman offered hearsay and opinion testimony to the effect that he understood Jackson was prevented access to the telephone to call him and volunteered gratuitously that, based upon his experience with Ocean Springs authorities, he would not be surprised if this were so. Our view of this factual point, however, is controlled by Jackson's testimony. At no point does Jackson suggest that he was held incommunicado. If, in fact, one criminally accused is effectively prevented from communicating with his attorney pending trial by some matter beyond his control, that fact ought weigh heavily in favor of reversal for denial of his motion for a continuance. On the other hand, when the accused well knows of the date his trial is set, our law expects that he will take advantage of the rights and opportunities he has to confer with counsel. In this instance Jackson was obligated to demand of his jailer access to a telephone so that he might call Pittman and tell him what had happened. He may not complain via post-trial motion or on appeal if he has failed to take advantage of opportunities reasonably available to him. We will not reverse for denial of a new trial under these circumstances, absent substantial evidence that the accused was in fact denied the opportunity to engage in normal pre-trial conferences with his attorney.

C.
We turn now to Jackson's claim of ineffective assistance of counsel. The point, of course, may be raised on direct appeal. See Read v. State, 430 So.2d 832, 837 (Miss. 1983).
The legal theory Jackson here advanced is not wholly without merit. To prevail on a claim of ineffective assistance of counsel, the accused is not limited to showing that his counsel was guilty of neglect or misfeasance in performance of his duties. See Ferguson v. State, 507 So.2d 94 (Miss. 1987); and Waldrop v. State, 506 So.2d 273 (Miss. 1987). Such a claim has theoretical viability where its basis points not to the deficiencies in counsel's performance but rather that the trial court's refusal to grant a continuance made it practically impossible for counsel to be effective. See Morris v. Slappy, 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983). Any such claim of ineffective assistance, of course, is subject ultimately to the familiar standards emanating from Strickland v. Washington, 466 U.S. 668, 686-87, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 692-93 (1984) which we have accepted in cases such as Leatherwood v. State, 473 So.2d 964, 969 (Miss. 1985); Alexander v. State, 503 So.2d 235, 240 (Miss. 1987); and Carney v. State, 525 So.2d 776, 779-80 (Miss. 1988). The appellant must show prejudice in addition to ineffectiveness.
Jackson's ineffective assistance claim fails the prejudice prong of the Strickland v. Washington test. Indeed, the point is essentially the same as discussed above wherein we explained how the record fails to support Jackson's claim of prejudice from denial of a continuance. Despite being given more than adequate opportunity to develop such, the record of the hearing on Jackson's motion for a new trial discloses nothing which undermines our confidence in the outcome of the trial. Carney v. State, 525 So.2d at 780; Lambert v. State, 462 So.2d 308, 316-17 (Miss. 1985). To be sure, two brief pre-trial communications with counsel, never alone, *1191 amounting in the aggregate to no more than five or six minutes in duration, would ordinarily constitute powerful evidence of ineffective representation at the pre-trial or preparation stage. On the other hand, one criminally accused may not induce ineffectiveness by failure to advise his attorney of his whereabouts or to exercise opportunities reasonably available to him to communicate with counsel. In the absence of evidence that Jackson was in fact denied access to the telephone, we will not relieve him of the burden while he was in the Ocean Springs Jail of calling Attorney Pittman and advising Pittman of his whereabouts.
The assignment of error is denied.

IV.
Jackson finally argues that the State violated rights secured to him by withholding from Pittman information of his incarceration in the Ocean Springs Jail during the period May 30 to June 16, 1986. Nothing in the record reflects that the district attorney's office had knowledge of Jackson's incarceration itself until the morning of trial. Moreover, nothing suggests that Ocean Springs authorities were in any way acting in concert with the prosecution. The assignment of error is denied.
CONVICTION OF SALE OF PENTAZOCINE AND SENTENCE OF THIRTY (30) YEARS IMPRISONMENT WITHOUT ELIGIBILITY FOR PROBATION OR PAROLE AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON and ZUCCARO, JJ., concur.
PITTMAN, J., not participating.
NOTES
[1] The Court takes judicial notice that the Ocean Springs City Jail is approximately twenty-two miles distant from the courthouse in Gulfport.
[2] Section 99-15-29 reads in full as follows:

On all applications for a continuance, the party shall set forth in his affidavit the facts which he expects to prove by his absent witness or documents so that the court may judge of the materiality of such facts, the name and residence of the absent witness, that he has used due diligence to procure the absent documents or presence of the absent witness, as the case may be, stating in what such diligence consists, and that the continuance is not sought for delay only, but that justice may be done. The court may grant or deny a continuance in its discretion and may of its own motion cross-examine the party making the affidavit. The attorneys for the other side may also cross-examine and may introduce evidence by affidavit or otherwise for the purpose of showing to the court that a continuance should be denied. No application for a continuance shall be considered in the absence of the party making the affidavit unless his absence be accounted for to the satisfaction of the court. A denial of the continuance shall not be ground for reversal unless the Supreme Court shall be satisfied that injustice resulted therefrom.