# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-KA-00060-SCT

*ANTWOINE CORK*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/27/2010 |
| TRIAL JUDGE: | HON. JAMES T. KITCHENS, JR. |
| TRIAL COURT ATTORNEYS: | CHARLES COLON HEDGEPETH |
| | FORREST ALLGOOD |
| | DONNA SUE SMITH |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BRITTNEY S. EAKINS |
| DISTRICT ATTORNEY: | SCOTT WINSTON COLOM |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/16/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     Antwoine Cork sold cocaine to a police informant three times. A Lowndes County jury convicted him of three counts of sale of a controlled substance. Pursuant to the habitual and subsequent offender sentencing enhancements, the trial judge sentenced him to sixty years for each of the three convictions to run concurrently. There being no reversible error, we affirm.

# FACTS

¶2.    On July 23, 2009, Donald Richardson, an officer with the Columbus Police Department's Narcotics Division, arranged a purchase of narcotics with confidential informant Cathy Pass. Officer Richardson met with Pass in a parking lot and conducted a search for drugs by asking her to shake out her bra, pull out her pockets, and remove her shoes. Officer Richardson then wired Pass with video equipment in a purse for her to carry. He gave her a phone and $40 before dropping her off one block away from the target location. Pass went to a house and inquired about purchasing cocaine. The planned seller, Eli Orr, did not have drugs, so Pass dealt with a person she identified as "Twoine."

¶3.    During her first visit to the house, Pass purchased $20 worth of cocaine. She then called Officer Richardson and asked whether she could make a second purchase, which she did for the same amount. Pass returned to Officer Richardson's vehicle and gave him two pieces of cocaine. Officer Richardson then gave Pass another $20, and she made a third purchase of cocaine.

¶4.    Video from Pass's wired video equipment shows what appears to be something changing hands between Pass and one person, whom she identified as "Twoine, " at the house. She testified that the basis of her identification was that she had seen "Twoine" twice before and that he once sold drugs to someone she was with. Officer Richardson testified that he "freeze framed" the video to confirm the identity of the person Pass identified as selling the cocaine. He also testified that he compared the freeze frames to CPD's mugshot files.

¶5.     On April 29, 2010, the grand jury indicted Cork on three counts of the unlawful sale of a controlled substance in violation of Mississippi Code Section 41-29-139 (Rev. 2018). He was arrested and arraigned on May 27, 2010. He filed an affidavit of indigency and asked the court to appoint him counsel. The trial court appointed Donna Smith to represent him.

¶6.     Cork's trial was set for August 26, 2010, and on August 25, 2010, the State moved to amend the indictment to reflect Cork's habitual offender status under Mississippi Code Section 99-19-81 (Rev. 2020), as well as his subsequent offender status under Section 41-29-147 (Rev. 2018). In support, the State offered a two-count indictment in which Cork was accused of the sale of cocaine on October 19, 2007, and on November 8, 2007, when he had just turned seventeen years old. Cork had pled guilty to both counts. On May 22, 2008, the trial court had sentenced Cork to eight years for Count 1 but placed him in the Regimented Inmate Discipline (RID) Program and retained jurisdiction for the period of one year for the purpose of resentencing Cork in the event he completed the RID program. On May 28, 2008, the trial court had issued an identical sentence for Count 2.

¶7.     On August 24, 2010, the State offered Cork a plea for eight years on the three charges at issue. Smith stated that the prosecutor "came in and discussed the plea, and he ended up dropping portion – dropping part of his plea bargain, because of my client." After discussing the offer with Cork, the prosecutor told Smith the prosecution's plans to habitualize Cork. The trial court granted the motion to amend the indictment.

¶8. At the August 25, 2010, hearing, Cork asked for a continuance, indicating that his mother had retained different counsel for him and that he was not ready to start trial the next day. He could not name any attorney hired by his mother, and claims made by him that he had not spoken to his court-appointed attorney were refuted. The trial court denied Cork's motion for continuance.

¶9. Before the trial began, Cork renewed his motion for a continuance and a new attorney, stating to the court:

> I still want to say, Your Honor, that I should have a right to hire me a lawyer, because I got indicted the second – the second day before grand ended, and I didn't have enough time to tell my people to arrange the money to hire me a lawyer. And this term I just came back, and me and my lawyer haven't met. I want a paid lawyer.
>
> Not saying Ms. Donna Smith is not a good lawyer, but I would feel comfortable to have a hired lawyer to represent me, in the event – the potential that I see Ms. Donna Smith, that we had a little altercation about what was going on, and we supposed to be discussing the case, but we haven't.
>
> We were discussing – me and her, we was just arguing, sir, and I feel that she's not trying to represent me in her best potential, and I just – don't hold anything bad against Ms. Donna Smith, I know she good at what she do, but I don't feel that – if the – the Court can give me a continuance to have me a paid attorney, sir, I will.
>
> And I don't mean no disrespect, and thank the Lord that I could have me a lawyer, sir.

¶10. The court denied Cork's request.

¶11. The trial proceeded on August 26, 2010. The jury received instructions, but Cork's counsel did not request a confidential informant jury instruction. The jury found Cork guilty on all three counts. At sentencing, the trial court found that Cork was a habitual offender

4

and a subsequent offender under the controlled substance laws, sentencing Cork to sixty years' imprisonment without the possibility of parole on each of the three counts, with the sentences to run concurrently.

¶12. On appeal, Cork argues: 1) his convictions for three separate counts of sale of acontrolled substance violate the prohibition against double jeopardy; 2) Cork's sentence violates the Eighth Amendment; 3) the trial court misapplied the law when sentencing Cork pursuant to Section 41-29-147; 4) the trial court erred by granting the State's motion to amend the indictment; 5) the trial court erred by denying Cork's motion for a continuance; 6) the trial judge should have recused; 7) Cork was denied effective assistance of counsel; 8) Cork's convictions are not supported by sufficient evidence.

## Discussion

### I. The multiple charges against Cork do not violate the prohibition against double jeopardy.

¶13. Cork argues that his conviction for three separate counts of the sale of cocaine based on three exchanges that occurred between the same two people in a short time frame violates the prohibition against double jeopardy. He maintains that he could only be convicted of one count because the three exchanges constitute only one offense. Cork eschews the same elements test found in *Blockburger v. United States*, 284 U.S. 299 (1931), and instead contends that the Court must look to the "allowable unit of prosecution" under the statute to determine whether Cork's actions constitute more than one distinct offense under *Sanabria v. United States*, 437 U.S. 54 (1978) (internal quotation marks omitted) (quoting *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218 (1952). In *Sanabria*, the

5

defendant was indicted for violating a federal statute making it illegal to own or run an illegal gambling business. *Id.* at 57. The government submitted two factual scenarios to undergird the charges that, importantly, both stemmed from a single charge in the indictment: betting on horses and running numbers. *Id.* at 58. The trial court granted the defendant's motion for acquittal as to the former. *Id.* The government then appealed, and the question before the United States Supreme Court was whether the prohibition against double jeopardy barred a second trial on the latter theory. *Id.* at 64. The government conceded that it could not retry the defendant on the horse-betting theory, but it contended that the numbers theory had been dismissed before acquittal. *Id.* The *Sanabria* Court noted that an erroneous evidentiary ruling by the trial court led to the acquittal of the defendant due to insufficient evidence to support the charge, yet it held that the acquittal on the sole charge in the indictment sufficed to extend double jeopardy protection to the defendant. *Id.* at 68.

¶14. To the extent that the *Sanabria* Court discussed the phrase "allowable unit of prosecution," the phrase upon which Cork relies, it does so to point out that Congress defines crimes and sets the allowable unit of prosecution. *Id.* at 70. The indictment charging Sanabria charged him with the single allowable unit of prosecution of participating in an illegal gambling business that engaged in both horse betting and numbers betting. When the trial court acquitted him as to the horse-betting charge, the acquittal covered the whole charge. *Id.* at 71. "The Government's undisputed theory of this case is that there was a single gambling business, which engaged in both horse betting and numbers betting. With

6

regard to this single business, participation in which is concededly only a single offense, we have no doubt that petitioner was truly acquitted." *Id.*

¶15.    We fail to see how the single unit of prosecution portion of *Sanabria* applies here. The instant case is far different.  Cork does not, indeed cannot on the record before us, contend that the State is attempting to charge him twice for one unit of prosecution due to the unit of prosecution's covering more than one illegal activity.  Instead, he was charged with multiple counts of the same unit of prosecution. He fails either to distinguish *Barnette v. State*, 478 So. 2d 800, 802 (Miss. 1985), and *Watkins v. State,* 101 So. 3d 628, 633 (Miss. 2012), which allow for multiple charges under the controlled substances statute even when the charges arise from a common nucleus of operative fact or to explain how they might be improperly decided pursuant to *Sanabria*.  Accordingly, we find no merit in Cork's first issue.

### II.    Cork's sentence does not violate the Eighth Amendment prohibition against cruel and unusual punishment.

¶16.    Cork next argues that his sentence violates the Eighth Amendment prohibition against cruel and unusual punishment.  As noted above, the trial judge sentenced him to sixty years for each of the three convictions to run concurrently.

¶17.    Cork first argues that pursuant to *Miller v. Alabama*, 567 U.S. 460, 470 (2012), in which the United States Supreme Court held that the Eighth Amendment prohibits mandatory life without parole sentencing schemes for juveniles, the trial court erred by considering offenses committed by him when a juvenile for purposes of enhancing his sentence.  Cork identifies no case that so extends the *Miller* holding, and we decline to do so here.

7

¶18. Next, Cork argues that his sentence is disproportionate pursuant to *Solem v. Helm*, 463 U.S. 277 (1983). We disagree. Cork's sentence is legal pursuant to the applicable sentencing statutes. Such a sentence may be challenged as disproportionate to the crime on Eighth Amendment grounds, but Cork must show that his "sentence is 'grossly disproportional' to the crime[.]" *Tate v. State*, 912 So. 2d 919, 933 (¶¶ 48-49) (Miss. 2005) (quoting *Hoops v. State*, 681 So. 2d 521, 538 (Miss. 1996), *abrogated by Willis v. State*, 300 So. 3d 999 (Miss. 2020)). In *Tate*, we held that a similar sixty-year sentence for the possession and delivery of marijuana did not violate the Eighth Amendment *Id.* at 933. Indeed, Mississippi's appellate courts have repeatedly held such harsh sentences to be constitutionally acceptable. *Williams v. State*, 995 So. 2d 181 (Miss. 2001), *overruled on other grounds by Brown v. State*, 995 So. 2d 698, 703 (Miss. 2008); *Tate*, 912 So. 2d at 933; *Mosley v. State*, 104 So. 3d 839, 843 (Miss. 2012); *Parisi v. State*, 119 So. 3d 1061, 1067 (Miss. Ct. App. 2012), *cert. denied*, 119 So. 3d 328 (Miss. 2013) (table). We discern no reason to hold differently in today's case. Cork, citing *Davis v. State*, 724 So. 2d 342 (Miss. 1998), argues otherwise. However, unlike Cork, the defendant in *Davis* was not convicted as a repeat offender *Id.* Also, the *Davis* Court did not hold the defendant's sixty-year sentence for sale of cocaine within 1,500 feet of a church to be unconstitutional *Id.* at 343. Rather, it reversed the sentence and remanded to the trial court for further consideration of the issue. *Id.* at 346.

¶19. Cork's argument that his sentence violates the Eighth Amendment has no merit.

**III. The trial judge did not misapply the sentencing statute.**

¶20. Cork next contends that the trial court misapplied Mississippi Code Section 41-29-147 at his sentencing. It provides, in pertinent part, that "any person convicted of a second or subsequent offense under this article may be imprisoned for a term up to twice the term otherwise authorized, fined an amount up to twice that otherwise authorized, or both." Miss. Code Ann. § 41-29-147 (Rev. 2018) During sentencing, the trial judge said, "The Court finds that in count one that the law is that I have to sentence him to 60 years in prison without the possibility of parole, because he's an habitual offender and he's prior convicted." Cork argues that the trial court made an error of law in not realizing that the statute gave him discretion as to whether or not to apply the enhanced sentence.

¶21. Cork cites no authority to support his contention that such a statement by the trial judge warrants reversal of his sentence. "Failure to cite relevant authority obviates the appellate court's obligation to review such issues." *Arrington v. State*, 267 So. 3d 753, 756 (¶ 9) (Miss. 2019) (internal quotation marks omitted) (quoting *Byrom v. State*, 863 So. 2d 836, 853 (¶ 9) (Miss. 2003)). The trial judge indicated elsewhere in the record his full understanding that he had options when it came to sentencing Cork. The issue has no merit.

### IV. Cork fails to demonstrate reversible error in the trial court's decision to allow the amendment of his indictment.

¶22. We review a trial court's decision to allow amendment of an indictment *de novo*. *Williams v. State*, 131 So. 3d 1174, 1176 (¶ 6) (Miss. 2013).

¶23. Cork fails to demonstrate any interference with his ability to present a defense or unfair surprise that resulted from the trial court's grant of the State's motion to amend the indictment before the trial. *Brown v. State*, 282 So. 3d 61, 1192 (¶ 25) (Miss. Ct. App.

9

2019). Moreover, Cork cites no authority in support of the issue other than the newly adopted Mississippi Rule of Criminal Procedure 14(b)(2), and it does not apply to the case at hand since Cork's trial took place before its adoption. Cork makes no argument that he would have treated the proposed plea differently had the indictment already been amended.

## V. The trial court did not abuse its discretion by denying Cork's request for a continuance.

¶24. Cork argues that the trial court erred by failing to grant his *pro se, ore tenus* motion for continuance made immediately before his trial began. Cork asserts that the trial court should have granted the continuance in light of the granting of the State's motion to amend the indictment to add habitual offender status the day before the trial. Cork cites no authority to support the claim, however. Again, "Failure to cite relevant authority obviates the appellate court's obligation to review such issues." *Arrington*, 267 So. 3d at 756 (¶ 9) (Miss. 2019) (internal quotation marks omitted) (quoting *Byrom*, 863 So. 2d at 853 (¶ 9)).

¶25. Further, as the State argues in response, the issue lacks merit. " The standard of review to grant or deny a motion for a continuance is within the sound discretion of the trial court and will not be grounds for reversal unless shown to have resulted in manifest injustice." *Payton v. State*, 897 So. 2d 921, 931 (¶ 11) (Miss. 2003) (citing *Coleman v. State*, 697 So. 2d 777, 780 (Miss. 1997)). The defendant bears the burden of proving "not only abuse of . . . discretion, but also that the abuse actually worked an injustice in his case." *Morris v. State*, 595 So. 2d 840, 844 (Miss. 1991) (citing *Arteigapiloto v. State*, 496 So. 2d 681, 685 (Miss. 1986)). In short, Cork fails to argue, much less show, any injustice resulting from the denial of his requested continuance. In his brief, he makes generic and broad complaints that

the trial court allowed the State to fundamentally change the stakes of the trial, but he points to nothing specific in the record that shows any injustice.

¶26. The case upon which Cork's argument relies, *Chandler v. Fretag*, 348 U.S. 3, 10, 75 S. Ct. 1,5, 99 L. Ed. 4 (1954), is easily distinguished. There, the defendant waived his right to counsel until he was informed he would be tried as a habitual offender and faced punishment of up to life imprisonment. *Id.* Only then did the defendant assert his right to counsel. *Id.* at 4-9. The trial court denied his request and the defendant stood trial. *Id.* Later, the United States Supreme Court held that the defendant should have been granted a continuance in order to retain counsel to fight his status as a habitual offender *Id.* at 10. Unlike the defendant in *Chandler*, Cork had an attorney. Accordingly, today's case lacks the issue of denial of counsel integral to the *Chandler* Court's opinion.

### VI. The trial judge did not err by not recusing.

¶27. Cork next contends that the trial judge should have recused after saying, during the hearing on Cork's motion for a continuance, "[T]he problem is—the problem is today is your day of reckoning, and you just don't like it. You just don't like that this day is here." It should be noted that the two sentences quoted above are but a small part of the overall exchange between the judge and Cork.

¶28. The Mississippi Supreme Court "applies an objective standard in deciding whether a judge should have disqualified himself." *Jones v. State*, 841 So. 2d 115, 135 (Miss. 2003) (citing Miss. Code of Jud. Conduct Canon 3). "[A] judge is required to disqualify himself if a reasonable person, knowing all circumstances, would harbor doubts about his impartiality." *Jenkins v. Forrest Cnty. Gen. Hosp.*, 542 So. 2d 1180, 1181 (Miss. 1988)

11

(internal quotation marks omitted) (quoting *Cantrell v. State*, So. 2d 325, 332 (Miss. 1987) (Sullivan, J., concurring)) . Cork states that the judge should have recused due to bias against Cork based on his statement on the day of the trial that it was Cork's "day of reckoning."

¶29.   "On appeal, a trial judge is presumed to be qualified and unbiased and this presumption may only be overcome by evidence which produces a reasonable doubt about the validity of the presumption." *Jones*, 841 So. 2d at 135 (citing *Bredemeier v. Jackson*, 689 So. 2d 770, 774 (Miss. 1997)). "In determining whether a judge should have recused himself, the reviewing court must consider the trial as a whole and examine every ruling to determine if those rulings were prejudicial to the complaining party." *Jones*, 841 So. 2d at 135 (citing *Hunter v. State*, 684 So. 2d 625, 631 (Miss. 1996).

¶30.   Cork failed to move for recusal below. Therefore, his argument is barred here. *Foster v. State*, 716 So. 2d 538, 540 (¶ 7) (Miss. 1998); *Banana v. State*, 635 So. 2d 851, 853 (Miss. 1994).

### VII.   Cork fails to show that he received ineffective assistance of counsel.

¶31.   "[G]enerally, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings." *Dartez v. State*, 177 So. 3d 420, 422–23 (¶ 18) (Miss. 2015) (citing *Archer v. State*, 986 So. 2d 951 (Miss. 2008)). The Court addresses ineffective assistance of counsel claims on direct appeal only when "[1] the record affirmatively shows ineffectiveness of constitutional dimensions, or [2] the parties stipulate that the record is adequate and the Court determines that findings of fact by a trial judge able to consider the demeanor of witnesses, etc., are not needed." *Bell v. State*, 202 So. 3d 1239, 1242 (¶ 12) (Miss. 2016) (alterations in original) (internal quotation marks omitted) (quoting *Read v.*

*State*, 430 So. 2d 832 (Miss. 1983)).  Because the record here suffices, we address Cork's ineffective assistance claims on direct appeal.

¶32.    "[T]o prevail on an ineffective-assistance-of-counsel claim, a defendant must first prove that his counsel was deficient, which requires showing that 'counsel made errors so serious that he or she was not functioning as the counsel guaranteed the defendant by the Sixth Amendment.'"  *Chamberlin v. State*, 55 So. 3d 1046, 1050 (¶ 4) (Miss. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  "Secondly, a defendant must prove that the deficient performance prejudiced the defense, which requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id.* (quoting *Strickland*, 466 U.S. 668).

¶33.    The Court "strongly presume[s] that counsel's conduct falls within the wide range of reasonable professional assistance, and the challenged act or omission might be considered sound trial strategy."  *Id.* (¶ 5) (internal quotation marks omitted) (quoting *Liddell v. State*, 7 So. 3d 217 (Miss. 2009)).  Thus, "defense counsel is presumed competent," and "even where professional error is proven, this Court must determine if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."  *Id.*

¶34.    First, Cork contends his trial counsel was constitutionally ineffective for failing to ask for a continuance.  Cork offers no argument in an effort to bear his burden of demonstrating that his attorney was constitutionally ineffective.  However, even if Cork could overcome the presumption that his attorney's decision not to do so was reasonable, he cannot demonstrate *Strickland* prejudice.  Cork himself made the motion and engaged in a significant

13

conversation with the trial judge in an attempt to obtain the continuance. There is no reason to believe the result would have been any different had the motion been made by counsel.

¶35. Second, Cork contends his counsel was ineffective for failing to object to the State's amendment of his indictment. In support, Cork reiterates his position that the court's decision to allow the indictment was in error, but he does not provide any argument or citation of authority to bear his burden of proving constitutional ineffectiveness. Even if he had, he provides no argument that he was prejudiced.

¶36. Third, Cork argues his trial counsel should have requested a confidential informant jury instruction. The State goes so far as to concede that the better course of action for Cork's trial counsel would have been to request the instruction. However, Cork makes no effort in his brief to demonstrate, as is his burden, that the failure to request the instruction prejudiced him.

¶37. Cork's contention that his trial lawyer rendered constitutionally ineffective assistance fails.

**VIII. Sufficient evidence supports the jury's conviction of Cork.**

¶38. "Should the facts and inferences considered in a challenge to the sufficiency of the evidence 'point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty,' the proper remedy is for the appellate court to reverse and render." *Johnson v. State*, 950 So. 2d 178, 183 (Miss. 2007) (quoting *Miley v. State*, 935 So. 2d 998, 1001 (Miss. 2006)). There, a jury found a defendant guilty after watching video evidence of a buy and hearing testimony from narcotics agents and a crime lab drug analyst. *Id.* (¶ 22). Given the

14

almost identical facts to the matter at hand, we find that an argument regarding insufficiency of evidence is without merit.

¶39. **AFFIRMED.**

**RANDOLPH, C.J., MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR. KING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, P.J.**

**KING, PRESIDING JUSTICE, DISSENTING:**

¶40. This Court should reverse and remand Cork's convictions because the trial court improperly denied his requests for a continuance. Alternatively, we should vacate his sentence. Moreover, this Court should dismiss his ineffective assistance of counsel claim without prejudice. Accordingly, I respectfully dissent.

### 1. *Failure to Cite Authority*

¶41. The majority notes it has no obligation to consider the issue of the trial court denying Cork's request for a continuance because Cork failed to cite authority to support this claim. It also finds that Cork does not cite sufficient authority (despite citing some authority) in support of his contention that the trial court erred by amending his indictment. I write on this issue separately to express my disagreement with the Court's treatment of failure to cite authority as a seemingly automatic procedural bar.

¶42. The authority is clear that treating failure to cite authority as a procedural bar is permissive, not mandatory. *See, e.g.*, *McLain v. State*, 625 So. 2d 774, 781 (Miss. 1993); *Barbetta v. State*, 738 So. 2d 258, 261 (Miss. Ct. App. 1999) (King., J., concurring). Moreover,

> The general rule that questions assigned as error are waived in the appellate court by certain acts or omissions is not, in the light of its purpose, inflexible, and its application generally lies within the discretion of the court. . . .
>
> The reviewing court will be inclined to consider errors which were not sufficiently briefed or argued, where the interests of justice warrant it, that is, to prevent a miscarriage of justice.

5 C.J.S. *Appeal and Error* § 993 (footnotes omitted) (citations omitted).

¶43. By using this procedural bar liberally and without considering its discretion to apply it, this Court overlooks multiple problems with using failure to cite authority as an automatic procedural bar. First, the Court's extensive use of the procedural bar without considering its discretion hinders a party's ability to argue a novel legal theory. Second, it ignores that every factual situation is nuanced and unique and may not find equivalent support in caselaw. This is especially true for criminal defendants in Mississippi, whose very liberty is at stake, and against whom this Court seems to grow increasingly hostile. For example, in 2020, this Court decided thirty-one criminal appeals on the merits. Supreme Court of Mississippi 2020 Annual Report, https://courts.ms.gov/research/reports/SCTAnnRep2020.pdf (last visited Nov. 29, 2021). Of those cases, this Court reversed only three, or a mere 9.7 percent. *Id.* And because the State is generally prohibited from prosecuting appeals in criminal cases, the overwhelming majority of criminal appellants consist of the criminal defendant. *See* Miss. Code Ann. § 99-35-103 (Rev. 2020); *State v. Hicks*, 806 So. 2d 261, 263 (Miss. 2002). In contrast, this Court is more receptive to civil appellants, as it decided 103 civil appeals on the merits in 2020 and reversed, vacated, or remanded forty-four, or 42.7 percent, of the civil appeals. *Id.* Thus, it is likely more difficult for criminal defendants to find factual support in authority for their

16

arguments; this should not bar them from having those arguments considered by this Court. This is especially true given this Court's problematic holdings in the past that criminal defendants who cite authority, but do not cite authority regarding their specific factual situations, are also procedurally barred from raising those issues for a failure to cite authority. *See, e.g.*, **Glasper v. State**, 914 So. 2d 708, 726 (Miss. 2005) ("We first note that while Glasper refers us to **Strickland** [**v. Washington**, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)] and various decisions from this Court for the appropriate criteria we are to consider in reviewing claims of ineffective assistance of counsel, Glasper has wholly failed to cite to us a single case to support his specific claims of ineffectiveness of his trial counsel by allegedly failing to file critical motions, failing to invoke the adversarial process, and failing to investigate. Our cases are legion where we have stated that the failure to cite authority in support of an argument eliminates our obligation to review the issue.").

¶44. Third, while this Court should certainly hold litigants to certain standards, liberally applying this procedural bar in criminal cases fails to account for the fact that the public defender network in Mississippi, including the Office of Indigent Appeals, is insufficiently supported and lacks resources. *See* **Henderson v. State**, 323 So. 3d 1020, 1034 (Miss. 2021) (King, P.J., concurring in part and dissenting in part) ("Problems with Mississippi's public defender network, including excessive caseloads for attorneys, have been well documented."). Moreover, criminal defendants often file pro se briefs, and in doing so, their resources are minimal. The combination of fewer favorable cases to cite and fewer resources to locate any such cases creates a perfect storm for criminal defendants, and this Court should

be mindful of such problems before automatically applying a discretionary procedural bar for failure to cite authority.

## 2. *Motion for Continuance*

¶45. The trial court erred by failing to grant Cork's motion for continuance. "[A] defendant must be given a reasonable opportunity to employ and *consult with* counsel; otherwise, the right to be heard by counsel would be of little worth." ***Chandler v. Fretag***, 348 U.S. 3, 10, 75 S. Ct. 1, 5, 99 L. Ed. 4 (1954) (emphasis added). In ***Chandler***, the defendant waived the right to counsel on the underlying charge. *Id.* at 4. He was subsequently informed that he would be tried as a habitual offender. *Id.* at 4-5. "Immediately on being informed of the accusation and suddenly finding himself in danger of life imprisonment, he requested a continuance so that he could engage the services of an attorney; but the trial court refused the request and forced him to stand immediate trial." *Id.* at 8-9. The United States Supreme Court found that the defendant should have been afforded the continuance and counsel on the habitual offender accusation. *Id.* at 10.

¶46. Cork did not have a meaningful or reasonable opportunity to consult with counsel. The record indicates that Cork and his counsel first met regarding this case on August 24, 2010, with trial set for August 26, 2010, and discovery and motions deadlines having well passed. Cork then requested new counsel on August 25, 2010, at his first opportunity to be present before the court. The trial court gave him neither a hearing nor the opportunity to present evidence, thus no sworn testimony or other evidence exists. Cork stated that he had not been able to use the phone while incarcerated and had only spoken with his mother the day before, when he found out she had a private attorney to represent him. "Our law affords

persons incarcerated in this state an enforceable protection from unreasonable incommunicado detention." ***Jackson v. State***, 538 So. 2d 1186, 1190 (Miss. 1989). Further, Cork was arraigned less than three months prior, on May 27, 2010, and nothing in the record indicates when Donna Smith, his trial counsel, was appointed as his attorney. Smith indicated that the first time she asked Cork if he had witnesses to present was on August 25, 2010. A proper investigation of the case and issuance of subpoenas would have been nearly impossible to perform in twenty-four hours, especially given that the docket indicates that the discovery deadline was June 8, 2010, and the motions deadline was July 28, 2010. Thus, any witnesses that could be revealed on August 25, 2010, would likely violate the discovery deadline for failure to disclose those witnesses to the prosecution. While it is speculatively possible that Cork asked for a continuance to obtain new counsel for the purpose of delay, nothing in the record indicates this is true. Indeed, he first met with his attorney on August 24, 2010, and was first before the court with that attorney on August 25, 2010, indicating that he raised the issue at the first available time.

¶47. Moreover, the record indicates that a personality conflict between Cork and Smith existed such that Cork and Smith were not communicating. Smith indicated she ended a meeting because of Cork's "attitude" and stated that she refused to be cursed at by a nineteen-year-old. An attorney is required to reasonably communicate with his or her client. Miss. R. Pro. Conduct 1.4. Further, if representation of a client "will result in violation of the rules of professional conduct[,]" a lawyer "shall withdraw from the representation." Miss. R. Pro. Conduct 1.16(a)(1). If Cork was rendering Smith's duties to him impossible, she had an obligation to inform the trial court and perhaps move to withdraw as counsel.

19

Certainly, a defendant cannot purposely cause a conflict with counsel in order to force withdrawal. *See* **Hill v. State**, 269 So. 3d 1, 9 (Miss. 2018). But the record indicates that counsel first informed Cork of his trial two days before the trial, and only attempted meeting with him twice under such circumstances. No sworn testimony or evidence exists that Cork's behavior at this juncture amounted to purposely causing a conflict.

¶48. "Previously, this Court has held that, in order to grant a substitution of counsel during trial, 'the defendant must show good cause, such as a conflict of interest, a complete breakdown of communication, or an irreconcilable conflict which leads to an apparently unjust verdict.'" **Hill**, 269 So. 3d at 8 (quoting **Taylor v. State**, 435 So. 2d 701, 703 (Miss. 1983)). "The test is whether the accused has been protected, so far as counsel can do so, in all of his legal rights." **Augustine v. State**, 201 Miss. 277, 28 So. 2d 243, 247–48 (1946). "When an attorney provides adequate representation, a personality conflict between an attorney and a client is insufficient to establish an actual conflict." **Hill**, 269 So. 3d at 9.

¶49. Whether defense counsel provided adequate representation in this case is questionable. Counsel failed to request a continuance pursuant to Cork's wishes, failed to adequately prepare a defense against the last-minute sentence enhancements, failed to meet Cork earlier than two days before trial, failed to ask Cork if he had witnesses more than one day before trial and before the discovery deadline, failed to object to the last-minute motion to amend the indictment despite its untimely nature and its implied violation of the motions deadline in the scheduling order, failed to use any juror strikes, failed to object to testimony regarding Cork's prior mugshots, failed to request a confidential informant cautionary jury

20

instruction, and failed to pursue the motions for judgment nothwithstanding the verdict or for new trial, resulting in those motions languishing undecided by the court for nine years.

¶50.    Cork should have been afforded time to prepare a defense against his habitual and subsequent offender enhancements and, additionally, to pursue hiring private counsel who could properly and timely investigate the case.  Accordingly, the trial court abused its discretion by failing to grant Cork a continuance.  This Court should reverse his convictions and remand the case to the trial court for further proceedings.

### 3.    *Motion to Amend the Indictment*

¶51.    Additionally, Cork's indictment was improperly amended and is invalid.  Rule 7.09 of the Uniform Rules of Circuit and County Court Practice was in effect at the time of Cork's trial.[1]   It provided that an indictment could be amended so long as the defendant was "afforded a fair opportunity to present a defense and [was] not unfairly surprised."  URCCC 7.09.  Among the considerations for whether a defendant is unfairly surprised are whether the defendant is aware of the new indictment in order "to make an informed and rational decision when presented with a proposed plea bargain."  *Gowdy v. State*, 56 So. 3d 540, 546 (Miss. 2010).[2]  Additionally, "before a defendant can plead guilty, the trial court has a duty

---

[1]Cork points out that, were he to be tried today, the State would be required to afford him thirty days' notice of the intent to use his prior convictions for sentence enhancement. Miss. R. Crim. P. 14.1(b)(2).

[2]*Gowdy* applies retroactively to cases that were not yet final when the mandate issued in *Gowdy*.  *McCain v. State*, 81 So. 3d 1055, 1059 (Miss. 2012).  In *McCain*, the defendant had appealed and the Court of Appeals had handed down its judgment two days before the mandate issued in *Gowdy*.  *Id.* at 1058.  McCain then filed a motion for rehearing and then a petition for certiorari with this Court.  *Id.* at 1058-59.  Accordingly, this Court found that McCain's case was not final when the mandate issued in *Gowdy*.  *Id.* at 1059.  Cork's post-

21

to ensure that he 'understands the nature and consequences of the plea, and the maximum and minimum penalties provided by law.' The rule should not be different for defendants who choose to exercise their right to trial by jury." *Id.* (quoting URCCC 8.04(A)(4)(b)).

¶52. Adequate notice is achieved only when the formal pleadings containing the amendment are "filed sufficiently in advance of trial to ensure that a defendant will have a 'fair opportunity to present a defense' and will not be 'unfairly surprised.'" *Boyd v. State*, 113 So. 3d 1252, 1256 (Miss. 2013) (quoting URCCC 7.09). Whether a defendant received adequate notice involves a case-by-case determination. *Ferguson v. State*, 136 So. 3d 421, 424 (Miss. 2014). In *Ferguson*, this Court held that an amendment after the jury was empaneled, but before other trial proceedings began, did not constitute adequate notice. *Id.*

¶53. On August 24, 2010, the State offered Cork a plea deal of eight years, which upset him. The State consequently amended his indictment the next day to add the habitual offender enhancement and the subsequent controlled substance offender enhancement on the morning of August 25, 2010, the day before his trial. The State made no claims that it was unaware of his prior offenses and could not meet the docketed motions deadline of July 28, 2010. Clearly, Cork did not have notice regarding the maximum and minimum penalties provided by law in his indictment when considering his plea offer or when deciding to go to trial. Nor was he given time to present a defense to the amendments. Neither he nor his attorney previously remembered or understood that these were two distinct charges and were sentenced separately. Indeed, they were charged on the same indictment, the sentences were

trial motions were still pending before the trial court when the mandate issued in *Gowdy*, thus, *Gowdy* applies retroactively to this case.

22

identical, and he was placed in the Regimented Inmate Discipline (RID) program and subjected to resentencing, so it was reasonable to not understand prior to the amendment that Cork had been convicted of and sentenced for two separate controlled substance charges. Moreover, no evidence of whether Cork successfully completed the RID program or whether he was indeed resentenced, when resentencing replacing the original sentences could have removed his sentences from the scope of the habitual offender statute, was introduced.

¶54. It is clear that amending Cork's indictment the day before his trial unfairly surprised him, and he was not afforded a fair opportunity to present a defense. The State failed to give adequate notice that it would use his prior convictions to significantly enhance his sentence. It is clear that neither he nor his attorney understood until the day before trial that Cork had two prior felonies with two separate sentences. And Cork believed his prior sentences did not come within the scope of the habitual offender statute. Thus, the only currently valid indictment of Cork is his original indictment.

### 4. Ineffective Assistance of Counsel

¶55. This Court should dismiss Cork's ineffective assistance of counsel claim without prejudice because the record is insufficient regarding this claim. Ineffective assistance of counsel claims are generally more appropriately raised in post-conviction proceedings, as they often require evidence outside the trial court record. *Dartez v. State*, 177 So. 3d 420, 422-23 (Miss. 2015). This Court will only address such a claim on direct appeal if the "issues are based on facts fully apparent from the record." *Id.* at 423. A defendant must show that his counsel was both deficient and that the deficiency prejudiced the defendant's

23

ability to receive a fair trial in order to prevail on an ineffective assistance of counsel claim. *Id.*

¶56. First, Cork argues that counsel was deficient by failing to move for a continuance. Indeed, counsel admitted the day before trial that she did not fully understand that Cork's prior charges were two separate charges and sentences. Additionally, counsel did not enter any evidence regarding whether Cork completed the RID program to which he was sentenced or whether he was resentenced pursuant to the explicit language of the prior two court orders. Further, the record indicates that counsel first communicated with Cork a mere two days before his trial, and that such communication was difficult. Yet, missing from the record is the date on which counsel was appointed, what exactly counsel had done to prepare for trial, additional evidence regarding Cork's prior two convictions, any sworn testimony about what had transpired between counsel and Cork, and any sworn testimony regarding other issues Cork desired to raise in his defense.

¶57. Second, Cork argues that counsel was deficient by failing to object to the State's last-minute motion to amend the indictment. The docket indicates that motions were due by July 28, 2010, and the State did not file this motion until August 25, 2010. Again, counsel admitted the day before trial that she did not know that Cork's prior charges were two separate charges and sentences. Additionally, counsel did not enter any evidence regarding whether Cork completed the RID program to which he was sentenced or whether he was resentenced pursuant to the explicit language of the prior two court orders. Additional information regarding Cork's completion of the RID program and whether any resentencing

24

exists to assist in showing any prejudice is absent from the record. The scheduling order and order regarding the motions deadline are also absent from the record.

¶58. Third, Cork argues that counsel was deficient for failing to request a cautionary jury instruction regarding confidential informant testimony. According to the State's brief on appeal, "[t]he State concedes that the better course would have been to request the instruction." The State argues, though, that Cork was not prejudiced because the details of confidential informant Cathy Pass's arrangement with law enforcement were fully disclosed and Pass's testimony was corroborated. Yet, Pass's pay arrangement was not clear. The testimony indicated that Pass generally received $100 per buy for helping law enforcement, and that she helped law enforcement because her boyfriend was in trouble. But nothing in the record indicates how much money Pass earned for this particular situation. Nor does it indicate whether Pass's boyfriend was receiving help from law enforcement in exchange for her cooperation. Additionally, it is concerning that defense counsel failed to cross-examine Pass on these issues. The record is also devoid of any indication as to why counsel failed to cross-examine Pass on these issues or why counsel failed to request a cautionary jury instruction.

¶59. Cork also argues that animosity existed between counsel and Cork and that counsel did not adequately communicate with or zealously advocate for Cork. As further example, Cork points out that trial counsel did not pursue the filed post-trial motions, allowing them to languish for nine years, an incredibly troubling fact that the majority completely ignores. The record offers no indication as to how or why counsel allowed post-trial motions to languish undecided in the trial court for nine years.

25

¶60. I dissent and would reverse Cork's convictions. Alternatively, I would vacate the habitual offender portion of his sentence. I would also dismiss his ineffective assistance of counsel claim without prejudice.

**KITCHENS, P.J., JOINS THIS OPINION.**